UNITED STATES of America, Plaintiff-Appellee,

v.

Blaine JOHNSON, Defendant-Appellant.

No. 81–1019.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1982.

Decided Aug. 26, 1982.

David R. Gamble, Smith & Gamble, Ltd., Carson City, Nev., for defendant-appellant.

Donald J. Campbell, Asst. U. S. Atty., Reno, Nev., for plaintiff-appellee.

Before WISDOM,* DUNIWAY, and NORRIS, Circuit Judges.

DUNIWAY, Circuit Judge:

We affirm a conviction under the Wild Free-roaming Horses and Burros Act, Pub.L. 92–195, 85 Stat. 649, 16 U.S.C. § 1331 *et seq.*

Johnson was convicted of removing a wild free-roaming horse from public lands, in violation of § 8(a)(1) of the Act, 16 U.S.C. § 1338(a)(1). The case was tried to the court, upon stipulated facts. On appeal, Johnson argues only that the Act is vague and overbroad and that, for those reasons, it is unconstitutional.

### I. *Facts.*

Investigator High of the Bureau of Land Management saw a man and two stock trucks parked on a road on public land, about 32 miles west of Austin, Nevada, at 9:05 p. m., on July 23, 1980. One truck had Utah license plates. The next day, High learned that a Utah stock truck had been seen in Austin, Nevada, at about 5:00 p. m., loaded with what appeared to be wild horses. On July 26, High went back to the place where he had seen the two trucks and found tracks showing that a truck had been backed across the road at six places. A dead mare, which would have had a colt nursing, was found near one place. There were signs that the mare had died in a ditch that the truck had backed into, and had been dragged by the truck to the place where she was found. Further investigations revealed that the six horses in the Utah truck were brought to Utah at 5:00 a. m. on July 25, in the care of one Wayne Christiansen, a co-defendant, who had later sold them in Utah. Among them was an orphan colt. Christiansen told three people that the horses were mustangs caught in Nevada.

High and a Utah deputy sheriff interviewed Johnson and Christiansen after giving them *Miranda* warnings. The stipulation states:

Mr. Christiansen stated he had a brand inspection on the horses, and they were legal. He showed an inspection on six horses, all unbranded. The inspection was dated July 24, 1980. The inspector was Lee Streshley; the seller was Blaine Johnson and buyer listed as Wayne Christiansen.

The investigator [High] asked where the horses came from. Mr. Johnson stated from the Byer's Ranch, deeded land. The investigator then asked if they were their horses. Mr. Johnson stated yes, but the gates are open. The investigator then asked if the horses were in fact wild horses. Mr. Johnson said, no there are no wild horses or Mustangs, they are all domestic horses that went wild. The investigator informed that I had been on the Byer's Ranch and have seen their horses, and the horses in question were not at all like Johnson's horses Mr. Johnson stated BLM can't get the horses off the range, so we are doing it for them. Mr. Johnson stated it's about time we brought things to a head, we are still feeding them on our range and they drink our water.

.      .      .      .      .

Both suspects were informed that the horses Mr. Christiansen sold were located and were range horses. Mr. Johnson was asked if he had a horse permit. He stated no . . . . He was asked how he could have this type of horses. He did not answer.

.      .      .      .      .

The investigator stated to Mr. Johnson and Mr. Christiansen that a report will go to the United States Attorney. Both men stated they didn't care, that they would keep on catching horses and take them to Utah. They again said as far as they are concerned, the horses are not wild. But just domestic gone wild.

There was an oral stipulation at trial that, at the time in question, Johnson did

---

* The Honorable John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

not have a permit from the Secretary of the Interior authorizing him to remove wild free-roaming horses from the public land of the United States.

## II. *As Applied to Johnson in this Case, the Act is Not Unconstitutionally Vague.*

The purpose of the Act is stated in § 1, 16 U.S.C. § 1331, to be to protect wild free-roaming horses and burros "from capture, branding, harassment, or death." *See Kleppe v. New Mexico*, 1976, 426 U.S. 529, 531–532, 96 S.Ct. 2285, 2287–2288, 49 L.Ed.2d 34. In that case, the Court upheld Congress' power to enact the statute under the Property clause of the Constitution, Art. IV, § 3, cl. 2.

Section 8(a)(1) of the Act, 16 U.S.C. § 1338(a)(1), provides: "Any person who wilfully removes or attempts to remove a wild free-roaming horse . . . from the public lands without authority from the Secretary" commits a criminal offense. "Wild free-roaming horses" are defined as "unbranded and unclaimed horses . . . on public lands of the United States." § 2(b), 16 U.S.C. § 1332(b).

■ Johnson seizes upon the word "unclaimed." He argues that he made a claim upon the horse in capturing it and, hence, that it is not unclaimed, or at least, that he could reasonably believe that the statute did not forbid him to remove a horse to which he makes a claim. There is no merit in this argument. The stipulated facts make it clear beyond reasonable doubt that Johnson knew that the horse was wild and unclaimed, and that his actions were contrary to the Act. The argument that the horse was not unclaimed is frivolous. Johnson's response to investigator High is just playing with words. He clearly knew that the horse was both wild and unclaimed.

The Senate Report on this statute says this: "Particular concern was expressed by witnesses during the hearing that the original text of [the bill] did not recognize claims by individuals to ownership of unbranded horses or burros on public lands. Addition of the word 'unclaimed' in the definition of a wild free-roaming horse or burro serves to give recognition to the valid claims of individuals." Senate Rep.No.92–242, 1971 U.S.Cong. and Ad.News 2149, 2151. In the present case Johnson does not claim ownership of the horse, nor is there any indication that anyone else claimed ownership.

■ A case might arise in which we will have to consider more precisely what is meant by "unclaimed," but this is not that case. We may not strike down this statute because of the possibility of problems in other situations. "[I]f the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise." *United States v. Harriss*, 1954, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 1975, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, quoted in *United States v. Powell*, 1975, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228. In the case at bar, the record shows beyond a reasonable doubt that Johnson could "reasonably understand that his contemplated conduct is proscribed," *United States v. National Dairy Products Corp.*, 1963, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–598, 9 L.Ed.2d 561, quoted in *Mazurie, supra*, 419 U.S. at 553, 95 S.Ct. at 715. He is not an innocent trapped by lack of fair warning, nor is there shown to be any substantial danger of arbitrary and discriminatory enforcement. *See Grayned v. City of Rockford*, 1972, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222.

## III. *Johnson's Other Arguments are Without Merit.*

■ Johnson's second argument is that the statute encourages arbitrary conduct by those who enforce it and investigate possible violations, because they must rely upon the appearance of a horse and "do not use the statutory definition" to determine if it

is wild. In this case the horse that was removed from public land looked wild, and no doubt this factor encouraged the investigators to continue the inquiries that began when the stock trucks were observed parked on public land in the night. There is nothing wrong with that.

Johnson's third and final argument is that the statute is constitutionally overbroad because it applies to more than Congress intended. However, the statute itself states what Congress intended, and there is no claim that the statute forbids behavior that is protected by the Constitution. Congress clearly intended to forbid the precise conduct of which Johnson was found to be guilty.

The judgment is affirmed.