UNITED STATES of America

v.

Richard MOTTOLO, et al.

STATE OF NEW HAMPSHIRE

v.

Richard MOTTOLO, et al.

Civ. Nos. 83–547–D, 84–90–D.

United States District Court,
D. New Hampshire.

March 15, 1985.

Douglas J. Miller, Asst. U.S. Atty., Concord, N.H., Elizabeth Yu, U.S. Dept. of Justice, Washington, D.C., P. Lynn Peterson, U.S. Environmental Protection Agency, Boston, Mass., for United States.

Peter G. Beeson, Asst. Atty. Gen., Concord, N.H., for State of N.H.

Lynn D. Morse, Exeter, N.H., for Mottolo and Service Plumbing and Draining Co., Inc.

Rodney L. Stark, Manchester, N.H., for K.J. Quinn and Co., Inc.

Claudia C. Damon, Manchester, N.H., for Lewis Chemical Corp., and Sutera.

## ORDER

DEVINE, Chief Judge.

These are actions by the United States of America against defendants Richard Mottolo ("Mottolo"), K.J. Quinn and Co., Inc. ("Quinn"), Lewis Chemical Corporation ("Lewis"), Carl Sutera ("Sutera"), and Service Pumping and Drain Company, Inc. ("Service"), and by the State of New Hampshire against defendants Mottolo, Quinn, Lewis, and Sutera under section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act

of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), seeking to recover costs incurred in the cleanup of an allegedly hazardous waste site located in Raymond, New Hampshire. The matter comes before the Court on the following motions: (1) defendants' motion to dismiss plaintiff New Hampshire's complaint for failure to comply with the statute of limitations; (2) plaintiff New Hampshire's motion to dismiss defendant Quinn's counterclaim; (3) plaintiff New Hampshire's motion to consolidate *United States v. Mottolo, et al,* No. 83–547–D (hereinafter *"United States v. Mottolo"*), with *New Hampshire v. Mottolo,* No. 84–90–D (hereinafter *"New Hampshire v. Mottolo"*); (4) plaintiffs New Hampshire's and United States' motions to strike defendant Quinn's demand for jury trial; (5) defendant Sutera's motion for summary judgment against plaintiff New Hampshire; and (6) various motions to compel discovery.

### 1. Defendants' Motion to Dismiss

In considering the motion to dismiss plaintiff New Hampshire's complaint by defendants Quinn, Lewis, Sutera, and Mottolo in *New Hampshire v. Mottolo,*[1] the Court follows the well-established rule that all facts are construed in the light most favorable to plaintiff and taken as admitted, with dismissal to be ordered only if plaintiff is not entitled to relief under any set of facts he could prove. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Chasan v. Village District of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983), *aff'd without published opinion,* 745 F.2d 43 (1st Cir.1984). Here, defendants argue that New Hampshire's claims are barred by the three-year statute of limitations in section 112 of CERCLA, 42 U.S.C. § 9612(d):

No claim may be presented, nor may an action be commenced for damages under this title, unless that claim is presented or action commenced within three years from the date of discovery of the loss or the date of enactment of this Act [December 11, 1980], whichever is

later: Provided, however, That the time limitations contained herein shall not begin to run against a minor until he reaches eighteen years of age or a legal representative is duly appointed for him, nor against an incompetent person until his incompetency ends or a legal representative is duly appointed for him.

Defendants assert that since the State of New Hampshire incurred its alleged losses as early as the spring of 1979, the State's February 9, 1984, complaint for reimbursement of clean-up costs is time barred under the three-year statute of limitations in § 9612(d).

The sole issue to be determined on defendants' motion to dismiss is whether the State of New Hampshire's § 9607(a) action for reimbursement of removal, remedial, and response costs incurred at the alleged hazardous waste site in Raymond, New Hampshire, is subject to the three-year statute of limitations in § 9612(d). Defendants urge the Court to construe § 9612(d) as applicable to any type of claim or judicial action brought under CERCLA, whether for damages or for removal, remedial, or response costs (hereinafter "cost reimbursement"). Plaintiff New Hampshire urges the Court to construe this statute more narrowly, so as to apply only to claims against the Hazardous Substance Response Fund (42 U.S.C. §§ 9611–12) and judicial actions for damages to natural resources (42 U.S.C. §§ 9607[a][4][C] or 9611[b] ), but not to judicial actions for cost reimbursement (42 U.S.C. § 9607[a][4][A] ). The United States, appearing as *amicus curiae,* urges yet a third construction of the statute; the statute of limitations should apply only to Fund claims and judicial actions for damages to natural resources, and not to Fund claims and judicial actions for cost reimbursement.

### 1.a. Statutory Construction of Section 112(d)

The general rule of statutory construction in questions of federal law is to

---

**1.** Defendant Quinn has requested oral argument on the motion to dismiss. The Court finds pursuant to Rule 11(g), Rules of the United States District Court for the District of New Hampshire, that oral argument would not be of assistance to the Court and proceeds to resolution on the basis of pleadings and memoranda.

look first to the language of the statute and then to the legislative history if the statute is unclear. *Blum v. Stenson,* ——— U.S. ———, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). In cases involving statutes of limitation, the rule is that statutes of limitation sought to be applied to bar rights of the Government must receive a strict construction in favor of the Government. *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984). Where, as here, defendants' proposed construction would operate to bar actions for cost reimbursement under CERCLA by the United States and state governments more than three years after cost incurrence, § 9612(d) must be strictly construed in favor of the federal and state governments.

Finally, the remedial intent of CERCLA requires a liberal statutory construction designed to avoid frustration of the Act's purpose. In enacting CERCLA in 1980, Congress sought to provide the federal government immediately with tools necessary for prompt and effective response to the nationwide threat posed by hazardous waste disposal and to impose the costs and responsibility for remedial action upon the persons responsible for the creation of the hazardous waste disposal threat. *United States v. Reilly Tar and Chemical Corp.,* 546 F.Supp. 1100, 1110, 1112 (D.Minn.1982) (*"Reilly Tar"*). Given the remedial nature of CERCLA, its provisions should be afforded a broad and liberal construction so as to avoid frustration of prompt response efforts or so as to limit the liability of those responsible for clean-up costs beyond the limits expressly provided. *Id.*

The structure of CERCLA reveals four major categories of provisions: first, definitions (42 U.S.C. § 9601); second, provisions authorizing the United States to investigate and clean up hazardous waste sites (42 U.S.C. §§ 9604–06); third, provisions imposing liability upon responsible parties for costs of response, removal, and remedial actions, for damages to natural resources caused by hazardous waste disposal, as well as for penalties for violations (42 U.S.C. §§ 9607–9610); fourth, provisions concerning the creation, funding, and reimbursement of the Hazardous Substance Response Fund ("the Fund") and the Post-closure Liability Trust Fund, limited funds to be used for the payment of certain types of private and governmental claims for cost reimbursement and natural resources damages caused by hazardous waste disposal (42 U.S.C. §§ 9611–9654).

CERCLA has acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative history. *See United States v. Wade,* 577 F.Supp. 1326, 1331 (E.D.Pa. 1983); *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1142 (E.D. Pa.1982) (*"Stepan Chemical"*); *Reilly Tar, supra,* 546 F.Supp. at 1111. The statute was passed hastily by Congress as compromise legislation after very limited debate under a suspension of the rules. *See Stepan Chemical supra,* 544 F.Supp. at 1142–43; Frank Grad, "A Legislative History of the Comprehensive Environmental Response, Compensation and Liability ('Superfund') Act of 1980", 8 *Columbia Journal of Environmental Law* No. 1, pp. 1–2 (1982) ("Grad"). Section 9612(d) is a victim of this hasty drafting, its language and legislative history less than a model of clarity. However, the Court concludes that the statute is properly interpreted as imposing a three-year statute of limitations upon all claims against the Fund and also upon judicial actions for damages to natural resources, but not upon judicial actions for reimbursement of removal, remedial, or response costs. Thus, the Court agrees with the proposed construction advocated by the State of New Hampshire, rather than the alternative constructions presented by the United States and defendants.[2]

---

**2.** The Court notes that the statutory construction arguments of New Hampshire and the United States differ on the irrelevant issue of wheth- er the statute of limitations would bar all claims against the Fund after three years (New Hampshire) or, rather, would bar only natural re-

The New Hampshire construction is one which is both favorable to the Government, avoiding the shorter three-year limitation period, and consistent with the remedial intent of CERCLA, assuring that the Government is free to undertake thorough and cautious action in potentially protracted hazardous waste clean-up operations.

### 1.b. Statutory Language

Simply put, Congress created a silent exception to CERCLA's three-year statute of limitations by omitting any reference to judicial actions for cost reimbursement in section 112(d), 42 U.S.C. § 9612(d). This construction of § 9612(d), excluding judicial actions for cost reimbursement from the statute of limitations, is to be favored for several reasons; first, it is consistent with the applicable rules of grammar and punctuation; second, it is consistent with the use of the terms "claims", "actions", "damages", and "costs" throughout CERCLA generally and in § 9612 specifically; third, it assures that every portion of § 9612(d) is given meaning and effect; fourth, it is consistent with the underlying legislative history; and, fifth, it is consistent with decisions of other courts on related CERCLA issues. Given the lack of judicial precedent on this CERCLA issue and the lack of clear statutory language, the Court is forced to undertake an unusually detailed statutory construction analysis.

A facial reading of § 9612(d), with due respect for rules of grammar and punctuation, requires that the statute be interpreted as applying to all types of Fund claims, but to only one type of judicial action, that is, an action for natural resources damages. The Court reads the two "claims" and "damages" phrases as independent clauses which are separated by the conjunctive "nor", set off by commas, and mod-

ified by the limiting, dependent clause "more than three years...." Thus, the first portion of § 9612(d) should be read as follows:

> (d) No claim may be presented,/ nor may an action be commenced for damages under this title,/ unless that claim is presented or action commenced within three years from the date of the discovery of the loss or the date of enactment of this Act, whichever is later.... [Stops emphasized.]

The phrase "for damages" is contained wholly within the second independent clause and therefore modifies only its direct antecedent within the independent clause, the phrase "an action".

The Court finds the argument of the United States to be flawed insofar as it maintains that the phrase "for damages" was meant to modify both the "claims" and the "damages" clauses. This proposed construction ignores the placement of the second comma, which signals the end of the second independent clause ("nor may an action be commenced for damages under this title,"), as well as the beginning of the dependent clause (", unless that claim is presented or action commenced within three years....") which modifies both of the preceding independent clauses. In effect, the United States attempts to rewrite the statute to close the second independent clause after "nor may an action be commenced" and to expand the dependent modifying clause to read "for damages under this title, unless that claim is presented or action commenced...." However, there is nothing on the face of the statute to support the United States' proposed construction, nor is there any legislative history requiring such an artificial construction, and therefore the Court must apply the statute as written on the assumption that Congress understood the full import of the

source damage claims after three years (United States). As the issue of claims against the Fund for cost reimbursement is not before the Court, any statutory construction decision bearing on this issue is dictum. The Court discusses the claims issue only insofar as necessary to the construction analysis and to reject defendants' argument that the term "claim" should be so

broadly construed as to bar even judicial actions. However, the Court notes that even if the United States' more narrow construction were to prevail, a judicial action for reimbursement of response costs would, *a fortiori*, be considered outside the scope of the statute of limitations.

placement[3] of this million-dollar comma. *See generally United States v. Naftalin*, 441 U.S. 768, 772–74 & n. 5, 99 S.Ct. 2077, 2081–82 & n. 5, 60 L.Ed.2d 624 (1979) (punctuation, although not decisive, provides useful confirmation in questions of statutory construction).

The second reason that New Hampshire's proposed construction is to be favored is that it is consistent with the use of terms throughout CERCLA. Contrary to defendants' argument, the terms "claim" and "action" are not used interchangeably in the Act; a distinction is found throughout CERCLA in the use and meaning of the two terms. "Claim", defined in 42 U.S.C. § 9601(4) as meaning "a demand in writing for a sum certain"[4] is used consistently to refer to demands for compensation against the Fund, and in one case (42 U.S.C. § 9612[a]) to refer to a pre-claim/pre-action demand to the liable party. "Action" is not listed in the definitions of 42 U.S.C. § 9601, but is used consistently to refer to judicial actions, whether suits brought by the United States for reimbursement to the Fund (§ 9612[c][3]), suits brought by governmental and private parties directly against hazardous waste offenders for reimbursement of costs, or suits brought by federal and state governments for damages to natural resources (§ 9612[a]).

This distinction is best illustrated within § 9612, which sets forth procedures for presentation of claims against the Fund. Section 9612(a) provides:

(a) *All claims which may be asserted against the Fund* pursuant to section 111 of this title [42 U.S.C. § 9611] shall be presented in the first instance to the owner, operator, or guarantor of the vessel or facility from which a hazardous substance has been released, if known to the claimant, and to any other person

known to the claimant who may be liable under section 107 of this title [42 USCS § 9607]. In any case where the claim has not been satisfied within sixty days of presentation in accordance with this subsection, the *claimant may elect to commence an action in court* against such owner, operator, guarantor, or other person *or to present the claim to the Fund for payment.* [Emphasis added.]

This claim-action distinction is preserved throughout other sections of CERCLA. *See* 42 U.S.C. §§ 9608(c) and (d); 9611(a), (b), (d), (e), and (f); 9612(c)(2) and (3). In sum, a facial reading of the Act reveals that the terms "claim" and "action" carry distinctive meanings, and therefore § 9612(d) should be interpreted as applying to claims presented to the Fund and to judicial actions for damages.

The terms "costs" and "damages" are also assigned mutually exclusive definitions under CERCLA. The term "damages" is defined in 42 U.S.C. § 9601(6) to mean damages for injury or loss of natural resources. "Costs", although not defined in CERCLA, is consistently used to refer to costs of removal, response, or remedial action incurred in connection with the release of or disposal of hazardous wastes. *See* § 9607(a)(4)(A)–(C). By contrast, the term "damages" is consistently used in the context of natural resources or reference to the exclusive standing of federal or state government to recover for natural resource damages. *See* § 9607(a)(4)(C) and (f). Since the terms "damages" and "costs" maintain their distinct meanings throughout CERCLA, it is logical to conclude that the reference in § 9612(d) to "actions for damages" should be construed as applying only to judicial actions by government entities to recover for damages to natural resources, but not to judicial actions for cost reimbursement.

---

**3.** Punctuation rules require the insertion of a comma to signal the close of independent clauses in a complex/compound sentence. Edward Johnson, *The Handbook of Good English*, Facts on File Publications (1982), pp. 65–66, Rule 2–2. A comma is also required in confluences when alternative phrases finish their course together, to signal the close of the second, alternative phrase. H.A. Fowler, *A Dictionary of Modern English Usage*, Oxford University Press, 1944, p. 568, stops, paragraph D.

**4.** *See* § 9601(5) where "claimant" is defined as "any person who presents a claim for compensation under this Act".

The third reason in support of New Hampshire's proposed construction is that it assures that every portion of § 9612(d) is given meaning and effect, whereas the proposed alternative construction of defendants Quinn and Lewis would render portions of § 9612(d) mere surplusage. The New Hampshire construction assures that both the first and second sentences of § 9612(d) are given independent significance, resulting in a reading that all claims against the Fund, and any judicial action for damages, are barred unless brought within three years from the date of discovery of the loss or enactment of the Act. In contrast, Quinn's and Lewis's proposed construction would render the second clause of the first sentence of § 9612(d) surplusage, as judicial actions would be subsumed within the reference to "claims" in the first clause. Any reading which renders a portion of a statute mere surplusage and redundant is to be avoided if possible. *Pacific Mutual Life Insurance Company v. American Guaranty Life Insurance Company*, 722 F.2d 1498, 1500 (9th Cir.1984); *National Insulation Transportation Committee v. Interstate Commerce Commission*, 683 F.2d 533, 537 (D.C.Cir.1982). In this case, where Congress has included in §§ 9607(a)(4)(A)–(C) and 9612(a)–(c) language referring to actions for cost reimbursement as well as to actions for natural resources damages, and where Congress has included in § 9612(d) only the language pertaining to actions for natural resources damages, it may be presumed that Congress purposefully excluded actions for cost reimbursement from CERCLA's three-year statute of limitations in § 9612(d). *See generally Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (where Congress includes particular language in one section of a statute but omits it in another section of the same Act it may be presumed that Congress acted deliberately in the disparate inclusion or exclusion).

The § 9612(d) construction proposed by the United States similarly would render a portion of § 9612(d) mere surplusage. If § 9612(d) were to be interpreted as limiting only claims and judicial actions for natural resources damages, but not claims and judicial actions for remedial and response costs, the second sentence of § 9612(d) pertaining to the tolling of the three-year statute of limitations in cases involving minors would be meaningless. Given that natural resources damage claims and actions are the exclusive privilege of federal and state governments (§ 9607[f]), there would be no occasion when the three-year limit would have to be tolled for the benefit of a minor claimant or plaintiff seeking natural resources damages, and therefore the second sentence would be irrelevant. Thus the United States' proposed construction must be rejected in favor of New Hampshire's construction, which permits the tolling provisions of the second sentence of § 9612(d) to be applied in cases where a minor claimant seeks reimbursement of remedial or response costs from the Fund. *See* § 9607(a)(4)(B).

*1.c. Legislative History*

CERCLA's legislative history is of limited use in attempting to determine whether Congress intended § 9612(d) to apply to governmental judicial actions for cost reimbursement. As explained in Professor Grad's survey of CERCLA's legislative history, "Legislative History", *supra* at 1–2, the three-year effort of Congress to enact hazardous waste legislation spawned numerous bills of varied content. The final bill was the product of last-minute compromise between competing House (H.R. 85[5] and H.R. 7020[6]) and Senate (S. 1480[7]) bills, and carries virtually no direct legislative history. *Id.* at 1. Although the earlier House

---

**5.** H.R. 85, 96th Cong., 1st Sess. (1979), 126 CONG.REC. H9, 186–201 (daily ed. Sept. 19, 1980).

**6.** H.R. 7020, 96th Cong., 2d Sess. (1980), 126 CONG.REC. H9, 437–78 (daily ed. Sept. 23, 1980).

**7.** S. 1480, 96th Cong., 1st Sess. (1979), 126 CONG.REC. S14, 938–48 (daily ed. Nov. 24, 1980).

and Senate bills contained statutes of limitations, the relevance of the legislative history underlying the earlier bills is diluted by the fact that these bills differed from the final bill on the definition and scope of "damages", as opposed to "costs", and on the mechanics of cost reimbursement. However, a survey of the legislative history of CERCLA as passed initially, as well as subsequent legislative efforts to reauthorize CERCLA, confirms this Court's conclusion that judicial actions for cost reimbursement are not included within the three-year statute of limitations in § 9612(d).

Although H.R. 7020 was nominally the bill enacted into legislation,[8] the statute of limitations found in S. 1480 appears to be the closest antecedent to § 9612(d). S. 1480, the "Environmental Emergency Response Act", as introduced in July 1979, provided in section 6(b)(1)(E), "No claim may be presented nor may an action be commenced for damages under this Act unless that claim is presented or action commenced within six years from the date of discovery of the loss." S. 1480, *reprinted in* 1 A LEGISLATIVE HISTORY OF THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT OF 1980 (SUPERFUND), PUBLIC LAW 96–510, at 185 (1983) (hereinafter *"Superfund History"*). As reported out of the Committee on Environment and Public Works on July 11, 1980, the statute of limitations appeared in amended form at section 6(b)(3)(I), "No claim may be presented nor may an action be commenced for damages under this Act unless that claim is presented or action commenced within *three* years from the date of discovery of the loss *or the date of enactment of this Act, whichever is later.*" (Changes emphasized.) *Id.* at 295. The amended bill provided for Fund claims and judicial actions by both governmental and private third parties to recover costs of removal or remedial action as well as damages for economic loss, personal injury, or loss of natural resources. Section 4(a) and (b). Importantly, section 4(a)(1) and (2) listed costs of removal and remedial actions separately from damages for economic loss, and this distinction was recognized throughout the bill provisions. *Id.* at 268–69. The accompanying Senate report, S.Rep. No. 848, discusses the compensation scheme of the amended bill and the statute of limitations provision in section 4(b)(3)(I) several times, but refers to the statute of limitations only in the context of claims for *damages* against the Fund:

> Section 6(b)(3)(I) requires claims for damages to be presented to the Fund within three years from the date of the discovery of the loss or the date of enactment of the Act, whichever is later.

S.Rep. No. 848, *reprinted in* 1 *Superfund History* at 371. *See also id.* at 374. In the Committee report discussion of governmental or third-party judicial actions to recover for damages or removal or remedial costs, there is no mention of any applicable statute of limitations. *Id.* at 390. Similarly, in the discussion of subrogation rights and federal government judicial actions to obtain reimbursement for monies expended by the Fund, (section 6[c]), there is no discussion of any applicable statute of limitations. *Id.* Upon passage of S. 1480, the statute of limitations provision was again amended to appear in its present form as section 112(d) (§ 9612[d]). *See* S.Am. No. 2631, *reprinted in* 1 *Superfund History*, at 567, 637. Thus, the legislative history underlying S. 1480, although not decisive, is consistent with this Court's conclusion that Congress did not intend section 112(d), 42 U.S.C. § 9612(d), to apply to governmental judicial actions for cost reimbursement.

H.R. 85, the "Comprehensive Oil Pollution Liability and Compensation Act", introduced in January 1979 (*see* 2 *Superfund History*, at 474, 508), and passed by the House on September 19, 1980 (*id.* at 1016,

---

**8.** Having passed S. 1480, as amended, the Senate then considered H.R. 7020, as initially passed by the House. The Senate voted to strike all of H.R. 7020 after the enacting clause and substituted the provisions of S. 1480, as amended, thereby treating the revenue measures of the legislation as if they had originated in the House. *Grad* at 29.

1046), contained the following statute of limitations at section 107(1):

(1) No claim may be presented, nor may an action be commenced for damages recoverable under this title, unless that claim is presented to, or that action is commenced against, the owner, operator, or guarantor, or against the fund, as to their respective liabilities, within three years from the date of discovery of the economic loss for which a claim may be asserted under section 103(a), or within six years of the date of the incident which resulted in that loss, whichever is earlier.

This statute of limitations, read in conjunction with section 103(a) of the bill which defined "damages for economic loss" as including removal costs, apparently would have precluded any governmental action to recover costs more than three years after incurrence of the cost and more than six years after an incident of oil pollution. The report of the House Committee on Merchant Marine and Fisheries, *id.* at 525, supports this all-inclusive construction of section 107(1):

The statute of limitations for presenting claims or maintaining causes of action under this Act is set out in subsection (1). The claimant has three years after discovering an economic loss, described in section 103, to assert his claim. There are instances where it may take some time to discover economic loss resulting from oil pollution; hence, a claimant is given a generous amount of time within which to assert his claim. In order to allow for a final resolution of claims, however, an outside limit is placed on the assertion of a claim—six years after the date of the incident which resulted in the loss. The use of this type of statute of limitations permits enough passage of time to allow discovery of long-term loss caused by the oil pollution; yet the outer limit of six years prevents the assertion of stale claims.

*Id.* at 560. However, this Court finds that the intent underlying H.R. 85, section 107(1), should not control construction of CERCLA § 9612(d) because CERCLA as enacted does not treat "costs" as an element of "damages" and because CERCLA is designed to address a far wider scope of hazardous waste clean-up problems than the narrower oil-spill focus of H.R. 85, thereby requiring a longer statute of limitations for cost recovery following potentially lengthy hazardous waste clean-up operations.

H.R. 7020, the "Hazardous Waste Containment Act of 1980", as initially passed by the House on September 23, 1980, (*see* 2 *Superfund History*, at 389), provided in section 3071(c):

(c) TO WHOM LIABLE.—The liability for costs described in subsection (b) shall be to the governmental entity which incurred such costs. ... The Administrator, or any other such governmental entity to which a person is liable under this section for the recovery of costs referred to in subsection (b), shall bring an action under this section for the recovery of such costs against the person liable promptly following his determination of the amount of any such costs.

*Id.* at 441. The accompanying House Report, H.R.Rep. No. 1016, Part I, *reprinted in* 2 *Superfund History* at 47, *et seq.*, describes this section only as a mechanism enabling prompt reimbursement of the Hazardous Waste Response Fund, and does not describe the section as a statute of limitations designed to foreclose federal or state government cost recovery actions brought after a specific time period. *Id.* at 48 and 64. Therefore, the Court concludes that there is nothing in the legislative history underlying H.R. 7020 as initially passed by the House which undermines the Court's interpretation of § 9612(d).

Perhaps the most useful information concerning Congressional intent on the scope of § 9612(d) is to be found in subsequent legislative bills. The 98th Congress, 2d Sess., considered several bills pertaining to funding reauthorization for CERCLA (*see* 42 U.S.C. § 9653 terminating CERCLA-authorized taxes on September 30, 1985). Although Congress did not succeed in passing

final legislation, both House and Senate bills contained, *inter alia,* proposed amendments to CERCLA's statute of limitations in § 9612(d). H.R. 5640,[9] the "Superfund Expansion and Protection Act of 1984", passed by the House of Representatives on August 10, 1984, contained a provision amending § 9612(d) so as to create separate sections concerning claims and actions for damages (as defined in 42 U.S.C. § 9601[6]) and claims and actions for recovery of costs (described in 42 U.S.C. § 9607[a]). H.R. 5640, section 117. The proposed amendment would limit claims and actions for natural resource damages to three years following the discovery of the loss or promulgation of certain regulations and would limit claims and actions for cost recovery to six years after the date of completion of the response action. *See also* H.R.Rep. No. 890, Part I, 98th Cong., 2d Sess., 58 (1984), 130 CONG.REC. H7614 (daily ed. July 23, 1984). The same statute of limitations amendments were contained in S. 2959,[10] "Superfund Expansion and Protection Act of 1984". Finally, S. 2892,[11] "Superfund Amendments of 1984", section 15, also contained amendments to § 9612 distinguishing between the limitation for claims and actions for response costs (three years from completion of response action), and the limitation for claims and actions for damages under § 9607(a)(4) (three years from date when relevant final regulations promulgated). Thus, implicit within these bills is a recognition by Congress that § 9612(d), as currently written, does not apply to claims and actions for cost reimbursement.

### 1.d. Judicial Construction

The limited precedent available favors this construction of § 9612(d). In *State of New York v. General Electric Company,* 592 F.Supp. 291 (D.N.Y.1984), the Court briefly considered the scope of the statute of limitations in § 9612(d) in the context of its holding that plaintiff New York's fail-ure to comply with the sixty-day notice requirements of § 9612(a), did not amount to a jurisdictional defect in the State of New York's claim for costs of remedial and response actions. In dicta, the court noted that the statute of limitations provision in § 9612(d) appeared to apply only to judicial actions for damages to natural resources and not to judicial actions for removal and remedial costs. *Id.* at 300 & n. 17. The only other ruling related to the statute of limitations issue in CERCLA appears to be distinguishable. In *United States v. Wade,* 14 ENVTL.L.REP. 20437, 20438, (ENVTL.L.INST.) (E.D.Pa. Mar. 22, 1984), the court rejected plaintiff United States' argument that cost reimbursement actions are subject to the six-year statute of limitations applicable to statutory claims by the federal government found in 28 U.S.C. § 2415, rather than the three-year bar of § 9612(d). However, this Court finds that *United States v. Wade* must be construed narrowly because the *Wade* court reached only the issue of whether 28 U.S.C. § 2415 should be read into § 9612(d). The court found no basis for such a combined reading where CERCLA cost reimbursement actions did not fit easily into any part of 28 U.S.C. § 2415 and where there was no indication that Congress intended 28 U.S.C. § 2415 to apply in CERCLA litigation. However, the *Wade* decision, narrowly construed, does not conflict with this Court's ruling that no statute of limitations controls governmental judicial actions for cost reimbursement under CERCLA. This Court agrees with the *Wade* court in the finding that Congress omitted any reference within CERCLA to another statute of limitations which should control CERCLA judicial actions for cost reimbursement, and agrees that 28 U.S.C. § 2415 does not apply directly to control government cost reimbursement actions under CERCLA.

### 1.e. Alternative Statutes of Limitation

The Court next addresses the issue of which, if any, statute of limitations controls

9. H.R. 5640, 98th Cong., 2d Sess., 130 CONG. REC. H8929 (daily ed. Aug. 10, 1984).

10. S. 2959, 98th Cong., 2d Sess., 130 CONG.REC. S10562, 10584 (daily ed. Aug. 10, 1984).

11. S. 2892, 98th Cong., 2d Sess., 130 CONG.REC. S9527, 9531 (daily ed. July 31, 1984).

plaintiff New Hampshire's cost reimbursement action under CERCLA. As CERCLA itself contains no statute of limitations apart from § 9612(d), the general rule in an ordinary damage action would be to seek an analogous state or federal statute of limitations. *DelCostello v. International Brotherhood of Teamsters, et al,* 462 U.S. 151, 158–62, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983). *See Occidental Life Insurance Company of California v. Equal Employment Opportunity Commission,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). But where, as here, the State's federally-created claim is essentially equitable in nature, seeking reimbursement for monies expended,[12] the doctrine of laches, rather than an analogous federal or state statute of limitations, is generally applied. *Holmberg v. Ambrecht,* 327 U.S. 392, 395–96, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946); *Saffron v. Department of the Navy,* 561 F.2d 938, 941 (D.C.Cir.1977). However, in the specific case of a suit brought by a federal or state government in its sovereign capacity, even the doctrine of laches may not be applied to bar the suit. *See Costello v. United States,* 365 U.S. 265, 281, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961); *Utah Power and Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *State of California ex rel. State Lands Commission v. United States,* 512 F.Supp. 36, 40 (W.D.Cal.1981). Thus, the claim of New Hampshire for reimbursement of remedial and response costs under CERCLA is not barred by any statute of limitations or the doctrine of laches.

■ The Court finds in the alternative that even if New Hampshire's claim for cost reimbursement were to be characterized as a legal claim for damages or some type of mixed legal and equitable claim, the case would not be barred by any analogous state or federal statute of limitations.

There is no state statute of limitations applicable to this suit. New Hampshire laws do not contain a statute of limitations specifically applicable to a statutory action by the State in its sovereign capacity to recover monies for the public treasury. *See generally Occidental Life Insurance Company of California v. Equal Employment Commission, supra,* 432 U.S. at 367, 97 S.Ct. at 2455 (describing proper use of analogous state statute of limitations); *Guaranty Trust Company v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938) (local statute of limitations only applies to state or federal sovereign where statutory provisions expressly include sovereign). Furthermore, the most analogous federal statute of limitation, 28 U.S.C. § 2415(a),[13] imposing a six-year limit on United States sovereign actions sounding in contract, would not bar this action, filed less than five years following New Hampshire's first expenditure of clean-up costs. *See generally United States v. C & R Trucking Co.,* 537 F.Supp. 1080, 1082–83 (N.D.W.Va.1982) (and cases cited therein) (holding 28 U.S.C. § 2415[a] six-year contract statute of limitation controlled United States action to recover oil spill removal costs under the Federal Water Pollution Control Act ["FWPCA"], 33 U.S.C. § 1321[f][2]); *contra United States v. P/B STCO 213,* 569 F.Supp. 743, 744 (S.D.Tex.1983) (holding 28 U.S.C. § 2415[b] three-year tort statute of limitation controlled FWPCA cost recovery action under 33 U.S.C. § 1321[f][1]).

Thus, no matter how New Hampshire's claim is characterized, the Court concludes that the claim is not barred by any applicable statute of limitations or the laches doctrine. The Court therefore must conclude that Congress intended to allow federal and state governments to undertake judicial actions for reimbursement of removal, remedial and response costs expended un-

---

12. *See United States v. Reilly Tar and Chemical Company,* 13 ENVTL.L.REP. 20897–99 (ENVTL. L.INST.) (D.Minn. June 23, 1983), and discussion of Motion to Strike Jury Trial Demand, *infra.*

13. While 28 U.S.C. § 2415 does not apply *directly* to CERCLA government cost reimbursement actions, *see* 1.d. Judicial Construction, *infra,* the statute may be applied as an *analogous* statute of limitation.

der CERCLA at any time. *See generally United States v. City of Palm Beach Gardens*, 635 F.2d 337, 341 (5th Cir.), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981) (where no applicable statute of limitations, United States government statutory action to recover government monies could be brought at any time).

*2. Plaintiff State of New Hampshire's Motion to Dismiss Counterclaim*

Plaintiff State of New Hampshire has filed a motion to dismiss defendant Quinn's counterclaim in *New Hampshire v. Mottolo* under Rule 12(b)(1) and (3), Fed.R.Civ.P., claiming that this Court lacks subject matter jurisdiction over the counterclaim. Plaintiff State of New Hampshire contends that defendant Quinn's counterclaim is barred by the doctrine of sovereign immunity. Defendant Quinn responds with the argument that the State necessarily waived its sovereign immunity when the State initiated its cost recovery suit in this court. For the reasons stated below, the Court grants in part and denies in part plaintiff New Hampshire's motion to dismiss.

Plaintiff New Hampshire does not contend that the Eleventh Amendment to the United States Constitution bars defendant's counterclaim. Rather, plaintiff claims that the doctrine of sovereign immunity bars the counterclaim, arguing that the New Hampshire Legislature has not expressly waived the State's immunity from defendant's tort claims or from defendant's claims for contribution and indemnity against the State for any cost reimbursement owed by defendant Quinn to New Hampshire or to the United States.

■ The doctrines of Eleventh Amendment immunity and sovereign immunity are not identical, as the Eleventh Amendment represents a restraint upon the federal judicial power to hear suits against an unconsenting state, *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984), whereas the doctrine of sovereign immunity goes to the question of whether the sovereign may be sued at all.

*Id.* 104 S.Ct. at 907 & n. 9; *George R. Whitten, Jr., Inc. v. State University Construction Fund*, 493 F.2d 177, 179 & n. 2 (1st Cir.1974). However, these two doctrines do overlap here, where the State of New Hampshire has initiated litigation in a federal court. Filing suit as a plaintiff constitutes a waiver of Eleventh Amendment immunity as well as sovereign immunity with respect to any counterclaim asserted by a defendant which arises out of the same event underlying the State's claim and which is asserted defensively in recoupment for the purpose of diminishing the State's recovery. This implied waiver does not extend to any counterclaim unrelated to the State's claim or asserted for the purpose of obtaining an affirmative judgment against the State. *See Gunter v. Atlantic Coastline R.R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1906); *Fort Fetterman v. South Carolina State Highway Department*, 261 F.2d 563, 569 (4th Cir.1958); *Harsh California Corporation v. County of San Bernardino*, 262 F.2d 626, 628–29 (9th Cir.1958); *Mohegan Tribe v. State of Connecticut*, 528 F.Supp. 1359, 1366–67 (D.Conn.1982); *Maryland Port Administration v. S.S. American Legend*, 453 F.Supp. 584, 590 (D.Md.1978); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 459 F.Supp. 507, 526–30 (D.Fla.1978), *aff'd*, 621 F.2d 1340 (5th Cir.1980); *Burgess v. M/V Tamano*, 382 F.Supp. 351, 355–56 (D.Me.1974); *State of Alaska v. O/S Lynn Kendall*, 310 F.Supp. 433 (D.Alaska 1970).

■ Defendant's counterclaim requests that the State of New Hampshire be denied cost reimbursement by defendants because New Hampshire significantly contributed to the costs necessary for hazardous waste removal through its failure to adequately conduct and supervise the various clean-up operations at the Raymond, New Hampshire, site. Defendant Quinn's counterclaim, ¶¶ 7, 11, and d. This counterclaim may be construed as a purely defensive measure, whereby defendant resists payment of those clean-up costs incurred by New Hampshire, but not properly chargea-

ble to defendant Quinn under CERCLA. Such a defensive counterclaim is clearly permissible, and the State's motion to dismiss this portion of defendant's counterclaim must be denied.

■ ▪ However, to the extent that defendant Quinn raises counterclaims for affirmative relief against the State of New Hampshire, seeking indemnity and contribution from the State for clean-up costs incurred by the United States, the State's motion to dismiss must be granted. Defendant Quinn alleges that New Hampshire's negligent·failure to supervise operations at the Raymond site entitle defendant to contribution and indemnity from the State in the event that defendant Quinn is found liable to the United States for clean-up costs amounting to $744,000. This affirmative counterclaim pertains to the United States' clean-up efforts at the Raymond, New Hampshire, site, and thus falls outside the scope of the State's complaint and waiver of sovereign immunity. *See Burgess v. M/V Tamano, supra,* 382 F.Supp. at 355–56. Therefore, like defendant Quinn's third-party complaint in *United States v. Mottolo (see* March 27, 1984, Order), defendant's counterclaims against the State in this action requesting affirmative recovery (Counterclaim ¶¶ 8, 9, 10, Prayers [a] and [b], and the attorney's fee requests for *United States v. Mottolo* in Prayer [c]) must be dismissed.[14]

*3. Plaintiff New Hampshire's Motion to Consolidate New Hampshire v. Mottolo with United States v. Mottolo*

Plaintiff New Hampshire seeks consolidation of *New Hampshire v. Mottolo with United States v. Mottolo* for joint trial pursuant to Rule 42(a), Fed.R.Civ.P., citing the existence of common questions of law and fact. The United States has no objection to consolidation, provided that consolidation will not result in a jury trial of the United States' claims against defendants. Defendant Quinn objects to consolidation, arguing that confusion would result if the State of New Hampshire's CERCLA and pendent state nuisance and penalty claims were to be consolidated with the United States' CERCLA claims. Defendant Quinn also argues that consolidation would prejudice defendant, where New Hampshire's prior-filed state court action concerns state law claims identical to the instant state law claims and where consolidation might jeopardize defendant Quinn's right to trial by jury on the pendent state claims.

■ Rule 42(a), Fed.R.Civ.P., affords district courts broad discretion to consolidate cases pending in the same district where there exist common questions of law or fact. *A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Corporation,* 559 F.2d 928, 933 (4th Cir.1977); *Garber v. Randell,* 477 F.2d 711, 714 (2d Cir.1973). The rule, designed to promote judicial economy, permits the Court to weigh the savings of time and effort that consolidation would produce against any inconvenient delay or expense that would be caused to the parties and the Court. *Arroyo v. Chardon,* 90 F.R.D. 603, 605 (D.P.R.1981) (and cases cited therein).

■ In this case, the Court finds that *United States v. Mottolo* and *New Hampshire v. Mottolo* share common questions of law and fact with respect to the CERCLA claims of the United States and New Hampshire. The· cost reimbursement actions are most efficiently handled in one consolidated trial to avoid duplicative litigation and wasteful expenditure of resources by the parties and the Court. However, the court finds that New Hampshire's pendent state claims in *New Hampshire v. Mottolo* seeking injunctive relief and dam-

---

**14.** At least one court has recognized that a generator has the right to contest the propriety of response actions when a government brings an action to recover the costs of response actions. *J.V. Peters Co. v. Ruckelshaus,* 584 F.Supp. 1005, 1010–11 (N.D.Ohio 1984). The parties do not raise and this Court does not address how 42 U.S.C. § 9607(a)(4)(A) and (B), providing that generators are liable for all removal, remedial, and other necessary response costs consistent with the national contingency plan, may affect defendant's remaining counterclaims against the State.

ages against defendants Mottolo, Quinn, Lewis, and Sutera for creation of a public nuisance (Complaint, §§ VI and VIII) and seeking penalties for violation of the permit requirements of N.H. RSA 149:8 III (a) (Complaint § VII) raise different questions of law and fact and therefore do not qualify for consolidation with *United States v. Mottolo*.

The reasons justifying partial consolidation are twofold. First, the pendent state claims raise issues of law which are entirely distinct from the CERCLA cost reimbursement issues. New Hampshire seeks to obtain injunctive relief and damages against defendants Mottolo, Quinn, Lewis, and Sutera to compel those defendants to either undertake future remedial work at the Raymond, New Hampshire, site to finally abate the nuisance in a manner approved by the State of New Hampshire or to reimburse the State for all expenditures required to finally abate the nuisance. Plaintiff New Hampshire's Complaint, ¶¶ VI(1)–(22), IX(2). Such injunctive relief for additional future clean-up activities raises factual and legal issues different from the CERCLA claims for completed response actions "not inconsistent with the national contingency plan", 42 U.S.C. § 9607(a)(4)(A) and (B). The parties vigorously dispute defendant Quinn's right to jury trial on the pendent state claims, creating a possible logistical problem for consolidation. Similarly, New Hampshire's claim for civil penalties raises questions of fact and law concerning defendant's compliance with New Hampshire environmental laws which are irrelevant to the CERCLA actions. Therefore, consolidation of these state claims would prove more confusing than efficient.

A second, more compelling reason counsels against consolidation of these pendent state claims. Plaintiff New Hampshire initiated a state court action against these same defendants in May 1979, *New Hampshire v. K.J. Quinn and Company*, No. E–952–79 (New Hampshire Superior Court of Rockingham County, May 1979), raising identical nuisance and penalty claims. The Court finds no judicial economy in permitting plaintiff New Hampshire to file duplicative litigation in this court and obtain extremely expedited resolution of its state claims through the consolidation mechanism where New Hampshire's previously-filed state court litigation has already reached an advanced stage in Rockingham County Superior Court. (*See* Defendant Quinn's October 31, 1984, memorandum in opposition to consolidation, p. 2.) *See generally Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (considering propriety of a stay of federal court action pending resolution of concurrent state proceedings and applying "exceptional circumstances" test, including analysis of order in which jurisdiction was obtained by the concurrent forums as well as advanced state of proceedings in a particular forum); *Ryder Truck Rental v. Action Foodservices Corp.*, 554 F.Supp. 277, 280 (C.D.Cal.1983) (repetitive nature of a suit normally weighs heavily in favor of a stay or dismissal of the second, federal action). In sum, the Court finds that the lack of common questions of law and fact between the CERCLA and the state law claims, as well as the potential for state court resolution of state law claims prior to a routinely-scheduled trial of *New Hampshire v. Mottolo* require that only the CERCLA claims of that case be consolidated for trial with *United States v. Mottolo*. The remaining state claims in *New Hampshire v. Mottolo* will be considered in the ordinary course of this Court's docket.

### 4. Plaintiffs' Motion to Strike Jury Trial Demand

In both *United States v. Mottolo* and *New Hampshire v. Mottolo* plaintiffs United States and New Hampshire have filed a motion to strike the jury trial demand of defendants Quinn and Mottolo pursuant to Rule 39(a), Fed.R.Civ.P. Plaintiffs contend that defendants are not entitled to a jury trial under either the Seventh Amendment to the United States Constitution or CERCLA, because plaintiffs' CERCLA cost reimbursement actions are equitable actions for restitution. Defendants insist that they

are entitled to a jury trial on both CERCLA and state law claims. In view of the Court's decision not to consolidate plaintiff New Hampshire's pendent state law claims, the Court will address only the CERCLA jury trial issue at this stage of the proceeding.

Defendants offer no case law in support of their asserted right to jury trial in CERCLA cost reimbursement actions. Plaintiffs United States and New Hampshire, however, offer seven decisions holding that there is no right to jury trial in CERCLA actions for cost reimbursement under 42 U.S.C. § 9607 because the action seeks the equitable remedy of restitution: *United States v. Georgoff*, No. 83–1656–A, slip op. at 1–4 (N.D.Ohio Aug. 2, 1984); *United States v. Tyson*, No. 84–2663, slip op. (E.D.Pa. Nov. 28, 1984); *United States v. Union Gas Company*, No. C83–2456, slip op. (E.D.Pa. Aug. 2, 1984); *United States v. Wade*, No. 79–1426, slip op. at 2–4 (E.D.Pa. Feb. 21, 1984); *United States v. Argent Corporation, et al*, No. 83–523–HB, slip op. at 1–3 (D.N.M. Dec. 20, 1983); *United States v. Northeastern Pharmaceutical and Chemical Company*, No. 80–5066–CV–S–4, slip op. (W.D.Mo. Sept. 30, 1983); *United States v. Reilly Tar and Chemical Company*, 13 ENVTL.L.REP. 20897–99 (ENVTL L.INST.) (D.Minn. June 23, 1983). The Court finds these decisions persuasive and concludes that no Seventh Amendment right to jury trial attaches where plaintiffs seek merely equitable relief, the return of monies expended for the cleanup of hazardous waste. Plaintiffs seek restitution, that is, to restore the *status quo* by receiving their rightful reimbursement. This restitution remedy is under the jurisdiction of a court of equity, and there is no jury trial right where purely equitable relief is sought. *Ross v. Bern-*

*hard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970); *Dairy Queen v. Wood*, 369 U.S. 469, 471–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962). Therefore, plaintiffs' motions to strike defendants' jury trial demand are granted as to the CERCLA claims.

*5. Defendant Sutera's Motion for Summary Judgment*

Defendant Carl Sutera, president, treasurer, and sole shareholder of defendant Lewis Chemical Corporation, has filed a motion for summary judgment [15] against plaintiff New Hampshire in *New Hampshire v. Mottolo*.[16] Defendant Sutera asserts that he is entitled to judgment as a matter of law on plaintiff New Hampshire's federal CERCLA and state law claims because the State has failed to allege that the "corporate veil" of Lewis Chemical should be pierced and defendant Sutera held individually liable for Lewis' actions as the "alter ego" of the corporation. Plaintiff State of New Hampshire responds with the theory that such piercing of the corporate veil is not a necessary prerequisite to liability under either CERCLA or the state nuisance claims.

The Court finds that defendant Sutera's motion for summary judgment against the State of New Hampshire must be denied for the same reasons outlined in this Court's March 27, 1984, Order denying defendant Sutera's motion for summary judgment against the United States in *United States v. Mottolo*. Defendant's attempt to raise defective pleading on the alter-ego or corporate veil piercing issue is meritless, as there are alternative grounds for defendant Sutera's individual liability on the State's federal and state law claims.[17] Defendant Sutera may be individually liable under CERCLA, 42 U.S.C.

---

**15.** Defendant Mottolo has requested argument on this motion, but the Court finds such argument to be unnecessary, and proceeds to resolution of the motion on the basis of the parties' pleadings and memoranda. *See* Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

**16.** Sutera remains a party defendant in *United States v. Mottolo* in any event.

**17.** The State's complaint does not set forth any pleadings of fraud or misuse of the Lewis corporate form by Sutera, and the State memorandum of law does not rely on the "piercing of the corporate veil" as a ground for Sutera's liability.

§ 9607(a)(3), for arranging disposal of hazardous wastes. *See United States v. Mottolo,* March 27, 1984, Order, pp. 2–10; *United States v. Northeastern Pharmaceutical and Chemical Company, Inc., supra,* slip op. at 35 (W.D.Mo. Jan. 31, 1984). Sutera's alleged involvement with the disposal of the hazardous substances is a factual matter disputed by the parties and, therefore, summary judgment must be denied. Rule 56, Fed.R.Civ.P. *See generally Early v. Eastern Transfer,* 699 F.2d 552, 554–55 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983) (to succeed on motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that moving party is entitled to judgment as a matter of law). It is also clear that defendant Sutera may be individually liable for the torts of a corporation if he directed or personally participated in the tortious activity. *United States v. Mottolo,* March 27, 1984, Order at p. 8; *see Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st Cir.1980). Given that the parties dispute material facts pertaining to Sutera's participation in the tortious conduct of Lewis, defendant Sutera's motion for summary judgment on the state claims must be denied.

### 6. Discovery Motions

In *United States v. Mottolo* plaintiff United States filed a motion to compel production of documents by defendants Quinn and Lewis Chemical. Pursuant to this Court's Order of December 4, 1984, the parties have conferred and resolved all disputes except defendant Quinn's objections to plaintiff United States' second set of requests for production of documents. Defendant Quinn's objections are reviewed in four categories.

■ The *first* category of Quinn's objections is premised on the fact that the contested documents, test results, and reports concern the nature and identity of wastes produced by defendant Quinn subsequent to the 1975 to 1979 time period which is the focus of this suit and are therefore irrelevant and beyond the scope of this lawsuit. (*See* Nov. 26, 1984, objections by Quinn to Requests No. 6, 7, 8, 10, 13, 40, and 41.) Plaintiff United States claims that the contested documents are relevant, as they would assist plaintiff in determining what hazardous wastes were produced by defendant Quinn from 1975 to 1979, and possibly deposited at the Raymond, New Hampshire, site. Plaintiff further explains that defendant Quinn did not test its wastes from 1975 to 1979, and therefore these subsequent reports and test results are the best available testing information concerning the 1975 to 1979 period, given that defendant Quinn has been engaged in the same or similar manufacturing processes from 1975 to date. It appears that these test results are reasonably calculated to lead to discovery of admissible evidence, within the meaning of Fed.R.Civ.P. 26(b)(1). *See Kelleher v. Omark Industries, Inc.,* 20 Fed.R.Serv.2d 200, 201 (D.Mass.1975) (permitting discovery of subsequent accidents involving same or similar products). Therefore, defendant Quinn is ordered to produce the documents listed in plaintiff United States' Requests No. 6, 7, 8, 10, 13, 40, and 41.

The *second* category of defendant Quinn's objections concerns document requests which defendant Quinn finds vague or lacking in specificity. Defendant Quinn has interposed objections to plaintiff's Requests No. 17–29, each of which requests documents forming the basis of or relating to defendant Quinn's denial of a single paragraph of plaintiff's complaint. Defendant also objects to Requests No. 31–36, each of which requests documents which form the basis of or relate to a single quoted assertion by defendant Quinn in its Answer. Where a Request is directed to a single factual denial or assertion by defendant, these Requests are neither vague nor lacking in specificity and defendant Quinn therefore is ordered to produce the documents requested. Where a Request calls for a conclusion of law, defendant may simply answer by stating that inasmuch as the Request calls for a legal con-

clusion, further answer is not deemed necessary.

▉ The *third* category of defendant Quinn's objections relates to plaintiff United States' Requests No. 38 and 39, which seek production of documents pertaining to defendant Quinn's contention that the wastes transferred from defendant Quinn to defendant Mottolo and/or defendant Service Pumping and Drain Co. from 1975 to 1979 did not contain hazardous substances within the meaning of § 101(14) of CERCLA, 42 U.S.C. § 9601(14). Defendant Quinn objects on the basis that the Requests improperly seek to shift the burden of proof onto defendant Quinn and to call for legal conclusions. Defendant's burden-shifting objection is meritless in the discovery contest and any documents relevant to the factual issue of whether, as defendant contends, its wastes were not "hazardous substances" as described in 42 U.S.C. § 9601(14) must be produced.

The *fourth* category of defendant Quinn's objections relates to plaintiff United States' Request No. 30, seeking production of all product formula cards concerning defendant Quinn's Malden and Seabrook plant products and production of a "Memos notebook". Defendant has objected on the basis that the cards and notebook are of such a "sensitive nature" that improper disclosure would be commercially disastrous for defendant Quinn and that records are so voluminous that significant personnel time would be required to compile the information. Finally, defendant Quinn complains that plaintiff's proffered confidentiality agreement for protection of the commercial trade secrets is inadequate. The parties indicated at the February 15, 1985, pretrial conference that there was a possibility of voluntary resolution of this matter and any such voluntary agreement subsequently made by the parties shall be effective. However, absent such agreement, the Court orders defendant Quinn to produce the requested documents and plaintiffs to protect the information in accordance with the terms of the attached Confidentiality Order.

▉ A separate discovery dispute has arisen out of plaintiffs' December 3, 1984, deposition of defendant Mottolo. Plaintiffs New Hampshire and United States have filed a motion for an order compelling defendant Mottolo to respond to questions concerning the place and manner of the disposal of liquid wastes obtained by Mottolo from the facilities of defendant Quinn. Plaintiffs seek to learn whether liquid wastes from defendant Quinn's facilities were deposited at any site other than the Raymond, New Hampshire, site which is the subject of this litigation. Defendant Mottolo objects on the ground that information pertaining to disposal of liquid wastes by defendant Mottolo at sites other than the Raymond site is irrelevant to the case at bar. Plaintiffs claim that the information is relevant because it would permit corroboration of defendant's testimony concerning the quantity of liquid wastes deposited in Raymond (by means of ascertaining quantity dumped at other sites). The Court finds that this information is relevant and discoverable under Rule 37(a)(2), Fed.R.Civ.P., as it may lead to admissible evidence concerning the quantity of waste deposits in Raymond, New Hampshire, and defendant Mottolo therefore is ordered to respond to these inquiries.

▉ The final discovery dispute concerns defendant Quinn's motion to compel the United States to respond to certain questions concerning the placement of the Raymond, New Hampshire, site on the "national priorities list" for further cleanup. However, defendant Quinn has never propounded these questions to the United States prior to this motion to compel, and its motion therefore must be denied as prematurely filed. Rule 37(a)(2), Fed.R.Civ.P.

For the reasons stated above, the Court orders the following:

1. Defendants' motion to dismiss plaintiff New Hampshire's complaint for failure to comply with the statute of limitations is denied;

2. Plaintiff New Hampshire's motion to dismiss defendant Quinn's counterclaim is granted with respect to defendant Quinn's claims for affirmative recovery (Counter-

claim ¶¶ 8, 9, 10, Prayers [a] and [b], and the attorney's fee requests for *United States v. Mottolo* in Prayer [c]), but is denied with respect to defendant's defensive claims (Counterclaim ¶¶ 7, 11, and d).

3. Plaintiff New Hampshire's Motion to Consolidate *New Hampshire v. Mottolo,* No. 84–90–D, with *United States v. Mottolo,* No. 83–547–D, is granted with respect to all CERCLA claims, but is denied with respect to the *New Hampshire v. Mottolo* pendent state law nuisance and penalty claims. The remaining state law claims in *New Hampshire v. Mottolo,* No. 84–90–D, will be considered in the ordinary course of this Court's docket.

4. Defendant Sutera's motion for summary judgment against plaintiff New Hampshire in No. 84–90–D is denied.

5. Plaintiff United States' motion to compel production of documents in *United States v. Mottolo,* No. 83–547–D, is granted in part and denied in part, as described above. Plaintiffs New Hampshire's and United States' motion to compel defendant Mottolo to respond is granted. Defendant Quinn's motion to compel the United States to respond is denied.

SO ORDERED.