**CP HOLDINGS, INC., et al.,**

v.

**GOLDBERG–ZOINO & ASSOCIATES, INC., et al.**

**Civ. No. 89–461–D.**

United States District Court, D. New Hampshire.

July 10, 1991.

Rath, Young, Pignatelli & Oyer, P.A. by Paul Barbadoro, Concord, N.H., for CP Holdings, Inc., Crivello Properties and Frank P. Crivello.

Merrill & Broderick by Richard C. Nelson, Manchester, N.H., for Goldberg–Zoino & Associates, Inc.

Upton, Sanders & Smith by Russell F. Hilliard, Concord, N.H., for N.H. Highway Hotel, Inc.

## ORDER

DEVINE, Chief Judge.

In this civil action, plaintiffs, purchasers of a piece of property formerly known as the New Hampshire Highway Hotel, sue seller New Hampshire Highway Hotel, Inc. ("NHHH"), and Goldberg–Zoino & Associates, Inc., a Massachusetts engineering firm which conducted an environmental site assessment before plaintiffs took title to the property. Plaintiffs' complaint alleges breach of contract (Count I); negligent misrepresentation (Count II); and violations of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) (Count III) and New Hampshire's Hazardous Waste Cleanup Fund Law (Count IV). Jurisdiction is properly based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Presently before the court is defendant NHHH's motion to dismiss the federal and state hazardous waste claims for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. NHHH also argues that this court lacks jurisdiction over plaintiffs' state law hazardous waste claim. Rule 12(b)(1), Fed.R.Civ.P. Plaintiffs have timely objected thereto.

*Factual Background*

The facts as taken in the light most favorable to the plaintiffs [1] are as follows.

---

1. On a motion to dismiss, the court construes the material facts alleged in the complaint in

On November 17, 1987, by Purchase and Sale Agreement (hereinafter "Agreement"), plaintiffs agreed to purchase certain property located in Concord, New Hampshire, known as the New Hampshire Highway Hotel, including the real estate, the buildings and improvements thereon, and all rights and easements appurtenant thereto. As part of the Agreement, NHHH warranted that

> (c) During the Seller's ownership of the Premises there has been no use, storage or handling of hazardous waste or material on the Premises at any time, except that the Seller stored on the Premises for several years a number of drums of parking lot and driveway sealant (a bituminous material), all of which were removed circa 1980. The Seller has no knowledge of any use, storage or handling of hazardous waste or material on the Premises prior to the Seller's ownership thereof.

Complaint, Exhibit A, Agreement at 11, ¶ 17(c).

In addition, according to the complaint, the Agreement provided that NHHH agreed to indemnify plaintiffs from any and all "losses, damages, liabilities, costs, expenses and claims of any kind" arising from a material breach or inaccuracy in any of the warranties or representations contained within the Agreement. Agreement at 12, ¶ 18(b).

Title to the property was conveyed on September 19, 1988. On November 15, 1988, plaintiffs proceeded with plans to demolish and raze the buildings located on the property. On November 17, 1988, all demolition work was enjoined by the State of New Hampshire following an on-site inspection disclosing asbestos and asbestos-containing materials.

Plaintiffs were notified that pursuant to New Hampshire law and CERCLA, they were responsible for cleaning up the asbestos before work could continue. Plaintiffs have undertaken said cleanup and now seek recovery costs from defendants.

*Discussion*

I. CERCLA Claim

CERCLA was enacted by Congress in 1980 as a response to the increasing environmental problems resulting from the release and disposal of hazardous substances. The statute was designed to "provide for liability, compensation, cleanup and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste sites." *3550 Stevens Creek Associates v. Barclays Bank of Calif.*, 915 F.2d 1355, 1357 (9th Cir.1990) (quoting Pub.L. No. 96–510, 94 Stat. 2767 (1980)), *cert. denied,* — U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991). The essential policy underlying CERCLA was to place the ultimate responsibility for cleaning up hazardous waste on "those responsible for the problems caused by the disposal of chemical poison." *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1553 (11th Cir.1990).

The relevant portions of CERCLA at issue in this case are as follows. Title 42, U.S.C. § 9601 provides the following definitions:

> (9) The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.
>
> (14) The term "hazardous substance" means ... (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title ... (D) any toxic pollutant listed under

---

the light most favorable to the plaintiff, with dismissal granted only if plaintiff has presented no set of facts upon which relief can be granted. *United States v. Mottolo,* 605 F.Supp. 898 (D.N.H.1985); *Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578 (D.N.H.1983), *aff'd without opinion,* 745 F.2d 43 (1st Cir.1984).

section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412]....

(29) The terms "disposal", "hazardous waste", and "treatment" shall have the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C.A. § 6903].

A private right of action for the recovery of cleanup costs is created by 42 U.S.C. § 9607(a), which states in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government ...

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ....

Further, private parties are not barred from contractually shifting CERCLA liability from one party to another:

(e)(1) ... Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

(2) Nothing in this subchapter, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

42 U.S.C. § 9607(e).

Defendant's arguments revolve around two key definitions in CERCLA: that of "dispose" and of "facility". As this and numerous other courts have noted, however, "CERCLA has acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative history." *United States v. Mottolo*, 605 F.Supp. 898, 902 (D.N.H.1985).[2] Depending on what definitions are accorded to various words and phrases within the statute, sections, subsections, and even sentences within CERCLA seem to contradict themselves with little or no internal consistency. Indeed, those courts which have attempted to unravel CERCLA's definitions have found no solace in either the "plain meaning" of the statute or the reams of legislative history. Instead, in an attempt to glean legislative intent, courts seem to resort to a sort of "Purkinje phenomenon",[3] hoping that if they stare at CERCLA long enough, it will burn a coherent afterimage on the brain.

While the particular CERCLA definitions and legal issues raised by this case are matters of first impression for this court,

---

**2.** Indeed, courts have not been shy to harshly criticize CERCLA as a poorly drafted piece of federal legislation. *See, e.g., Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1080 (1st Cir.1986); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989); *Roe v. Wert,* 706 F.Supp. 788, 792 (W.D.Okla.1989); *United*

*States v. Wade,* 577 F.Supp. 1326, 1331 (E.D.Pa. 1983).

**3.** An optical illusion named for Johannes E. Purkinje (1787–1869), whereby the eye retains an afterimage of an object in a different color from the original.

the First Circuit has offered some guidance for unraveling CERCLA's ambiguities:

> CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment. We are therefore obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes.

*Dedham Water, supra,* 805 F.2d at 1081 (citing *United States v. Mottolo, supra,* 605 F.Supp. at 902), and *United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 192 (W.D.Mo.1985)).

In addition, the First Circuit has held that it "will not interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." *Dedham Water, supra,* 805 F.2d at 1081 (citing *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1045 (2d Cir.1985)).

■ In order to state a viable private action under CERCLA, the plaintiffs must prove:

(1) that the defendant is within one of the four statutory categories of covered persons liable for such costs, 42 U.S.C. § 9607(a);

(2) that there has been a release or threatened release of any hazardous substance from a facility, 42 U.S.C. § 9607(a)(4);

(3) that such release or threatened release has caused plaintiff to incur response costs, 42 U.S.C. § 9607(a)(4); and

(4) that the response costs were necessary and consistent with the national contingency plan, 42 U.S.C. § 9607(a)(4)(B). *Prudential Ins. Co. of America v. United States Gypsum,* 711 F.Supp. 1244, 1251 (D.N.J.1989).

For the purposes of this motion, defendant challenges only the first of these four requirements. The court begins, then, with the defendant's argument that they have not "disposed" of hazardous wastes or materials as defined by CERCLA.

### A. "Disposal" under CERCLA

■ Defendant NHHH first argues that the CERCLA definition of "disposal" cannot apply to asbestos or materials made with asbestos, since CERCLA adopts the Solid Waste Disposal Act (hereinafter "SWDA") definition of "disposal", which classifies "disposal" as the

> discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or onto any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3). Defendant posits that the SWDA definition of disposal only contemplates the disposal of "hazardous wastes", not the disposal of "hazardous substances".

Courts have found that for the purposes of CERCLA, asbestos is considered a "hazardous substance". *United States v. Nicolet, Inc.,* 712 F.Supp. 1205, 1207 (E.D.Pa. 1989); *cf. United States v. Fleet Factors Corp.,* 901 F.2d 1550 (11th Cir.1990) (accepting, by implication, that asbestos is covered by CERCLA). The *Nicolet* court held that asbestos qualified as a hazardous substance by virtue of 42 U.S.C. §§ 9601(14)(B), (D), (E), which provides that a substance is to be considered hazardous if it is classified as such by any of a number of other environmental statutes. Since asbestos is classified as a hazardous substance pursuant to 42 U.S.C. § 9602, section 1317(a) of Title 33 and section 112 of the Clean Air Act (42 U.S.C. § 7412), the *Nicolet* court held that it met the definition of a "hazardous substance" for the purposes of CERCLA as well.

Defendant argues that since the SWDA definition of "disposal" only references "hazardous wastes" and not "hazardous substances", plaintiffs cannot meet the "disposal" requirement of section 9607. In support of this theory, defendant relies on *3550 Stevens Creek, supra,* the only other federal case which addresses a land purchaser's attempt to bring a private CERC-

LA action against a seller to recover response costs for the removal of asbestos from property.

When faced with the same "disposal" question, the Ninth Circuit held that "[o]n its face, 'disposal' pertains to 'solid waste' or 'hazardous waste,' not to building materials which are neither." *3550 Stevens Creek, supra,* 915 F.2d at 1361. The *Stevens Creek* court further concluded that

> there is no indication that materials containing asbestos installed as part of the structure of a building, as here, are such that asbestos fibers may 'enter the environment or be emitted into the air.' Even when action is taken that makes the asbestos friable, the resulting hazard is within the building.

*Id.*

Plaintiffs contend that the *Stevens Creek* definition of "disposal" should not be adopted since it would serve to make portions of CERCLA moot or contradictory.[4] The court agrees and further finds that this case can be distinguished in several significant ways from *Stevens Creek.*

Section 9607, which sets forth the prima facie case for establishing a private cause of action under CERCLA makes frequent mention of the "disposal of hazardous substances." If the court were to accept defendant's definition of "disposal", however, there could be no "disposal of a hazardous substance", since the definition of "disposal" would be at odds with the definition of "hazardous substances". Sections of the CERCLA statute regarding the disposal of hazardous substances, therefore, would have to be either ignored or read to mean only the disposal of hazardous wastes. There is no indication in the legislative history that Congress desired to limit the scope of private actions to encompass only hazardous wastes rather than all hazardous substances. Absent any evidence of legislative intent to the contrary, this court adopts the more liberal reading of section

9607 to include the disposal of all hazardous substances.

■ In addition, the *Stevens Creek* court's finding that there could be no "disposal" of asbestos since asbestos fibers would not be released into the environment does not apply in the present case. In *Stevens Creek,* the court was faced with plaintiffs who voluntarily removed asbestos as part of a renovation of a building. Here, the plaintiffs removed the asbestos by order of the state. The release or threatened release of asbestos into the environment was the result of the building's demolition—an action fully contemplated by both parties within the Agreement.

Defendant next argues that it did not "dispose" of a hazardous substance, since CERCLA requires a more active role in "disposal" than the sale of products containing asbestos or the sale of a building containing asbestos products. Defendant again relies on *Stevens Creek,* which held that "the construction of a building using these materials [cannot] fit into 'the discharge, deposit, injection ... or placing into or on any land or water' specified in the definition." *Id.* at 1361.

A number of courts have barred CERCLA suits against defendants who manufactured and/or installed asbestos products, such as insulation, into buildings on the theory that such a sale or installation does not constitute a "disposal". *Dayton Indep. School Dist. v. U.S. Mineral Products,* 906 F.2d 1059 (5th Cir.1990); *First United Methodist Church v. U.S. Gypsum,* 882 F.2d 862 (4th Cir.1989); *Prudential Ins. Co. v. U.S. Gypsum,* 711 F.Supp. 1244 (D.N.J.1989).

In *First United Methodist Church, supra,* the court spelled out its fear that to hold liable "all persons who manufactured, transported and installed asbestos products into buildings would be to shift literally billions of dollars of removal cost liability." *Id.* at 869.[5] While such a transferral of

---

**4.** Plaintiffs also cite recent criticism of the *Stevens Creek* decision. *See generally* Hartigan & Davis, *Asbestos Abatement Cost Recovery Under the Comprehensive Environmental Response,*

*Compensation, and Liability Act,* 14 Harv.Envt'l L.Rev. 253 (1990).

**5.** The *First United Methodist Church* court, in reaching its decision that the placing of asbestos

costs would indeed be improvident, this court recognizes a significant distinction between holding the manufacturer of asbestos products liable and holding a previous landowner who brought such products onto the property liable for CERCLA clean-up costs. When a plaintiff seeks out and purchases a particular commercial product, it cannot be said that purchase of that product is a "disposal" on the part of the seller. In contrast, it is reasonable to believe that the framers of CERCLA intended for the purchasers of land to be allowed to recover from former landowners who, unbeknownst to the buyer, had placed hazardous substances on the property prior to its sale. Section 9607 specifically holds liable for cleanup costs not only the present owners, but also "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). In the present case, it was not the placement of the asbestos products into the building that qualified as a "disposal", but rather the sale of the building with the knowledge that the building itself was to be disposed of. It is the opinion of this court, therefore, that the plaintiffs have alleged sufficient facts that, if proven, would allow them to show that defendant NHHH has "disposed" of a hazardous substance as defined by CERCLA.

### B. "Facility" under CERCLA

Defendant makes two arguments to support its contention that the Highway Hotel site was not a "facility" within the meaning of CERCLA. First, NHHH contends that the hotel site was a "useful consumer product", and not a "facility", and, second, it contends that CERCLA was designed to combat the problems of abandoned hazardous waste dumps, rather than the release of "useful consumer products in the structure of buildings." In support of its first argument, NHHH cites *Dayton Indep. School Dist., supra,* in which the court dismissed a CERCLA action against an asbestos manufacturer, holding that "school buildings and other community buildings" ... [were] " 'useful consumer products' " within the purview of CERCLA. *Id.* at 1065 n. 4. Other courts have held, however, that a building containing asbestos products does indeed satisfy CERCLA's "facility" requirement. *Stevens Creek, supra,* at 1360; *United States v. Metate Asbestos Corp.,* 584 F.Supp. 1143 (D.Ariz. 1984). The court finds the defendant's argument on this point, and its reliance on *Dayton,* to be misplaced.

Many courts have held that Congress created an intentionally broad definition for "facility", and a plaintiff need only show that a hazardous substance has come to be located on the property. *Shore Realty, supra; United States v. Bliss,* 667 F.Supp. 1298, 1305 (E.D.Mo.1987).

For once, however, CERCLA's legislative history does indeed provide insight into the "commercial product" limitation. In clarifying the limitation, the Senate Committee on the Environment and Public Works stated that the "consumer products" limitation was designed to ensure that amendments to CERCLA did not "extend the coverage of this amendment to finished consumer products such as those that might be found in a retail store, where such products *do not present a threat or release from a facility.* This is consistent with the definition of 'facility' contained in existing [42 U.S.C. § 9601(a) ] of CERCLA and its reference to consumer products." Senate Re-

---

into a building did not constitute a "disposal", also *expressed a belief that 42 U.S.C. § 9604 of* CERCLA, which limits the President's ability to respond to releases "from products which are part of the structure of, and result in exposure within, residential buildings or business or community structures," similarly limited the ability of private parties to bring such suits. While the defendants here do not specifically rely on this reasoning, the court notes that it does not find the *First United Methodist Church* court's reasoning persuasive or applicable for three rea-

sons. First, the statute provides for an exception to this limitation when "no other person" will be able to respond to the release. This, of course, implies that some person other than the President has the ability to respond in these situations. Second, the legislative history on section 9604 seems to indicate that the limitation was imposed on the President so as not to deplete monies from Super-fund sites. Third, as previously noted, this case is unique in that the release of asbestos was not confined to the interior of a building.

port (Environment and Public Works Committee) No. 11, 99th Cong., 1st Sess. 11 (Mar. 15, 1985) (cited as 1986 SARA Leg. Hist. 9, at 11 (1985)) (emphasis added).

■ The legislative history also indicates that the consumer products limitation was likely a result of fears that without such a limitation, businesses that routinely use hazardous substances in everyday operations could be held liable under CERCLA for injuries to workers or those exposed to the substances within the confines of the building.[6] It is clear, then, that the limitation on the definition of "facility" excluding "consumer products in consumer use" was designed to limit CERCLA so as not to cover exposure or release of hazardous substances from a consumer product solely within a building. Here, the release or threatened release of asbestos was not confined solely to the interior of a building or structure.

■ Defendant's second argument, that the building itself is a consumer product for the purposes of CERCLA, is equally without merit. If the court were to accept NHHH's definition of a facility, any commercial building or property that could be bought or sold would have to be classified as a consumer product if the property is used by the general public. This would effectively exclude all private actions against previous landowners, despite the fact that section 9607 clearly provides for such actions. Plaintiffs have alleged sufficient facts which, if proven, would establish the site in question as a "facility" for the purposes of CERCLA.

## II. State Law Claim

Defendant also has moved to dismiss Count IV of the complaint, which alleges a violation of New Hampshire's Hazardous Waste Cleanup Fund, New Hampshire Revised Statutes Annotated (RSA) 147–B.[7] Defendants argue, first, that RSA 147–

B:10 III(b) grants exclusive jurisdiction to the New Hampshire courts and that this court therefore lacks the proper jurisdiction to hear the claim pursuant to Rule 12(b)(1), Fed.R.Civ.P. Defendants next argue that, as with their CERCLA argument, the complaint fails to state a claim upon which relief can be granted because the incident in question fails to conform to the statute's definitions of "waste", "dispose", and "facility".

### A. Jurisdiction under RSA 147–B:10 III(b)

■ The statute in relevant part states, "[A]ny person who has expended funds to remedy environmental damage may also bring an action in the superior court for the county in which the facility is located...." Defendant's argument to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., centers on the statute's grant of jurisdiction to the state superior courts. Defendant states that "[j]urisdiction under RSA 147–B:10 III(b) lies exclusively 'in the Superior Court for the county in which the facility is located....'" The court finds that defendant's argument on this point, however, misrepresents both the letter of the law and its intent. While the statute does indeed grant the state courts jurisdiction to hear such matters, a plain reading of the statute shows that there is no attempt whatsoever to make such jurisdiction exclusive.

The defendant alternatively argues that even if the letter of the statute does not specifically grant the state courts exclusive jurisdiction, this must have been the legislature's intent "[s]ince there is no provision authorizing suit in any other forum...." Defendant's Motion to Dismiss at 9. Even if the New Hampshire Legislature intended to grant exclusive jurisdiction to the state courts, such a grant would be ineffective in a case such as the present one, which is properly based on diversity jurisdiction.

---

6. A report from a number of business organizations such as industrial launderers and printshop operators expressed the fear that without such a limitation, "wholesale and retail operations would be potentially subject to the requirements of the provision. Many items in a whole-

sale warehouse, distribution center or retail establishment are in the form of consumer products." 1986 SARA Leg.Hist. 27, at 551.

7. The complaint is brought as a private action under RSA 147–B:10.

The court therefore denies defendant's motion to dismiss Count IV of the complaint for lack of jurisdiction as being wholly without merit.

### B. "Disposal" under New Hampshire Law

■ Much like their argument regarding the plaintiff's CERCLA action, NHHH argues that the New Hampshire Hazardous Waste Cleanup statute's definition of "disposal" was meant to encompass only hazardous wastes, not hazardous substances. The statute expressly defines "disposal" as the "discharge, deposit, incineration, injection, dumping, spilling, leaking or placing of any waste into or onto any land or water so that the waste or any constituent of the waste may enter the environment, be emitted into the air, or be discharged into any waters, including groundwaters." RSA 147–B:2 II.

Liability under the New Hampshire statute is set out in RSA 147–B:10, which states, in relevant part, that a person may be held liable if he "(b) owned or operated a facility at the time hazardous waste or hazardous materials were disposed there." [8] If this court were to accept defendant's argument that the definition of "disposal" only encompasses wastes, half of all the statute's liability provisions would be moot. As with the CERCLA claim, this court must reject any definition which would effectively frustrate the Legislature's apparent intent. It is the opinion of the court, therefore, that the plaintiffs have alleged sufficient facts which, if proven, would entitle them to recovery under RSA 147–B.

### Conclusion

For the reasons stated hereinabove, defendant's motion to dismiss Counts III and IV (document no. 21) is denied.

SO ORDERED.

---

**8.** The New Hampshire statute does not offer a specific definition for the term "facility", nor have the parties raised the issue of whether the

Highway Hotel site is a "facility" under the statute.