**NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff,**

v.

**REGAL PRODUCTS, INC.,** Insurance Company of North America, Hartford Accident & Indemnity Company and National Surety Corporation, Defendants.

No. 93–C–183.

United States District Court,
E.D. Wisconsin.

Nov. 3, 1993.

Reinhart, Boerner, Van Duren by John M. Van Lieshout, Milwaukee, WI, for plaintiff.

Quale, Feldbruegge, Calvelli, Thom & Croke by William W. Ehrke, Milwaukee, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On February 24, 1993, the plaintiff, National Acceptance Company of America [NAC], filed a cost-recovery action against Regal Products, Inc. [Regal], under the Comprehensive Environmental Response, ·Compensation, and Liability Act [CERCLA], 42 U.S.C. §§ 9607 and 9613. In addition, NAC seeks declaratory relief against the insurer defendants, Insurance Company of North America, Hartford Accident & Indemnity Company and National Surety Corporation, for failure to defend and indemnify NAC for clean-up costs.

NAC has filed a motion for partial summary judgment against Regal on the issue of Regal's liability under CERCLA for the costs incurred investigating and remediating contamination at the former Regal facility at 11331 West Rogers Street, West Allis, Wisconsin [Rogers Street plant]. NAC's motion will be denied.

## I. Standard for Summary Judgment

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. *See* Rule 56(c), Federal Rules of Civil Procedure. Under Rule 56(c), the movant must show the following: (1) no genuine issue of material fact exists, and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, ·Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Id.* at 248, 106 S.Ct. at 2510. A dispute over such material facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the evidence presented is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Id.* 477 U.S. at 249–250, 106 S.Ct. at 2510–11.

## II. Factual Background

As required under Local Rule 6.05(a), NAC, as the movant, included with its motion proposed findings of fact which it believed constituted the factual propositions upon which there is no genuine issue of material fact along with references to affidavits and other supporting materials to support the proposed facts. Regal responded by disputing certain of NAC's facts and by presenting additional factual propositions—some of which it claimed were undisputed. See Local Rule 6.05(b)(1) and (2).

■ In responding to NAC's proposed findings of fact, Regal was obligated to cite evidentiary materials to support its claim that a dispute over a specific fact exists. Upon deciding a motion for partial summary judgment, the court will conclude that there is no genuine issue of material fact as to any proposed finding of fact which is sufficiently supported by proof and to which no proper response is set out. See Stewart v. McGinnis, 5 F.3d 1031, 1033–34 (7th Cir.1993); Local Rule 6.05(c).

The following supported facts are undisputed: NAC is a Delaware corporation with its principal place of business in Chicago. Regal is a Wisconsin corporation with its principal place of business in West Allis, Wisconsin. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it involves a federal question. Further, this court has personal jurisdiction over NAC and Regal, and venue in the eastern district of Wisconsin is proper under 42 U.S.C. § 9613 and 28 U.S.C. § 1391.

The Rogers Street plant was owned by Regal since at least 1980. (Van Lieshout Aff. at ¶ 3; Lillard Aff. at ¶ 2.) In 1982, Regal executed a note with NAC which was secured by a mortgage on the Rogers Street plant. Regal defaulted on its obligations under the note, and NAC acquired title to the Rogers Street plant at a sheriff's foreclosure sale on October 5, 1987. At that time, Regal had ceased its operations at the Rogers Street plant.

In August 1989, a prospective purchaser of the Rogers Street plant commissioned an environmental investigation of the plant. The investigation revealed the presence of hazardous substances in the soils surrounding the plant including trichloroethylene [TCE]. (Lillard Aff. at ¶ 3; Response of Defendant Regal to Plaintiff's Proposed Findings at ¶ 7.) As a result, further investigation was conducted to determine the extent of the contamination. The results of the investigation were set forth in a report from Twin City Testing Corporation which confirmed that the soil and groundwater were contaminated with hazardous substances, including TCE. (Lillard Aff. at ¶ 4; Islam Aff. at ¶ 4 and Ex. A.)

From at least 1976 until 1981, Regal utilized a parts cleaner or degreaser at the Rogers Street plant. (Newhauser Aff. at ¶ 3.) The parts cleaner used TCE as the degreasing fluid. (Newhauser Aff. at ¶ 3.) Regal generated waste TCE as part of its processes. (Van Lieshout Aff. at ¶ 4.) TCE is classified as a hazardous substance and a carcinogen by the U.S. Department of Health and Human Services and by the Wisconsin Department of Health and Social Services. (Islam Aff. at ¶ 9 and Ex. B; Van Lieshout Aff. at ¶ 6.)

The parts degreasing machine was comprised of a sealed concrete degreasing pit with an eight-inch thick base. (Defendant's Ex. E). There were no breaches, cracks or crevices in the pit through which any liquids could pass. (Savin Aff. at ¶ 4.) A stainless steel tank was placed into the concrete pit; the steel tank did not have any breaches or cracks through which any liquids could pass. (Savin Aff. at ¶ 4.) Between 1971 and 1986, there were no leaks from the concrete pit or the steel tank. (Savin Aff. at ¶ 4.)

According to the Twin City Testing report, high concentrations of TCE were found in the soil of the area formerly occupied by the Regal parts degreasing machine. (Islam Aff. at ¶ 4.) A different report by Thresher & Son revealed that the highest concentrations of TCE were located in soils and areas which did not coincide with the location of Regal's parts degreasing machine. (Defendant's Response to Motion for Partial Summary Judgment, Ex. K.) High concentrations of TCE were reported by Twin City Testing in the groundwater of the Rogers Street plant mon-

**1318**

itoring wells located adjacent to the former site of the parts degreasing machine. (Islam Aff. at ¶ 5.)

As of June 1990, several hazardous waste generators existed in the area immediately surrounding the site of the Rogers Street plant. (Defendant's Response to Motion for Partial Summary Judgment, Ex. D.) Several of the facilities housing the hazardous waste generators have reported the existence of leaking underground storage tanks on their properties. (Defendant's Response to Motion for Partial Summary Judgment, Ex. D.) In addition, there are seven inactive landfills located within a one-mile radius of the Rogers Street plant. (Defendant's Response to Motion for Partial Summary Judgment, Ex. J.) An auto salvage yard formerly occupied the area on which the Rogers Street plant is now located. (Defendant's Response to Motion for Partial Summary Judgment, Ex. K.)

NAC reported the existence of TCE contamination in the soil and groundwater at the Rogers Street plant to the Wisconsin Department of Natural Resources [WDNR]. Because of the high concentration of TCE contamination, NAC was ordered by WDNR to determine the nature and extent of the contamination and to take measures to remedy it. (Lillard Aff. at ¶ 5; Islam Aff. at ¶¶ 4, 5, and 6.)

To date, NAC has paid the following costs in connection with the investigation and remediation of the soil and groundwater contamination by hazardous substances at and around the Rogers Street plant: $21,912.50 to Twin City Testing, $9,658.75 to Layne GeoSciences and $77,015.00 to Geraghty & Miller, Inc. (Lillard Aff. at ¶¶ 7 and 8.) NAC has also paid attorneys' fees and costs associated with defending the order of the WDNR to remediate the Rogers Street plant. (Lillard Aff. at ¶¶ 7 and 8.)

### III. Law and Analysis

■ As a preliminary matter, Regal contends that NAC's motion for summary judgment should be denied because the case is relatively new and discovery has yet to be completed. Under Rule 56(f), Federal Rules of Civil Procedure, the court may refuse the application for judgment or may order a continuance where it appears "from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition...."

To the extent that Regal is seeking a denial of the motion or a continuance under Rule 56(f), Federal Rules of Civil Procedure, Regal was obligated to file a motion requesting such relief and was obliged to demonstrate affirmatively why it "cannot respond to movant's affidavits ... and how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *U.S. v. On Leong Chinese Merchant's Ass'n Bldg*, 918 F.2d 1289, 1295 (7th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991) (quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)). Regal has not filed such a motion nor has it made the requisite showing under Rule 56(f). Thus, I will decline Regal's invitation to deny NAC's motion on the ground that discovery is allegedly incomplete.

■ In order for NAC to establish Regal's liability under CERCLA, the following four-part test must be met:

1. the site in question must be a "facility" as defined by CERCLA;

2. the defendant must be a "responsible person" for the spill as defined by CERCLA;

3. there must be a release of a hazardous substance; and

4. such release must cause the plaintiff to incur response costs.

*Environmental Transportation Systems, Inc. v. Ensco, Inc*, 969 F.2d 503, 506 (7th Cir.1992). If NAC establishes each of the elements and Regal is unable to establish one of the defenses listed in 42 U.S.C. § 9607(b), NAC is entitled to summary judgment on the issue of liability. *Id.* at 507 (citing *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir.1989)).

## A. "Facility" Under CERCLA

A "facility" is defined under CERCLA as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). Regal does not dispute NAC's characterization of TCE as a hazardous substance. In addition, TCE is designated as a hazardous substance under 42 U.S.C. § 9602(a) and 40 C.F.R. § 302.4, by the administrator of the United States Environmental Protection Agency. Moreover, Regal concedes that "TCE has come to be located in the soils and groundwater within the property boundaries of 11331 West Rogers Street in West Allis, Wisconsin." (Response of Defendant Regal to Plaintiff's Proposed Findings at ¶ 16.)

I find that the Rogers Street plant is a "facility" within the contemplation of CERCLA. *See* 42 U.S.C. § 9601(9).

## B. Responsible Person

NAC argues that Regal meets the definition of a responsible person under § 9607(a)(2) and (a)(3). Section 9607(a)(2), defines the liability for former owners, and § 9607(a)(3) defines the liability for a party that arranged for disposal of a hazardous substance.

### 1. Former Owner Under § 9607(a)(2)

Under § 9607(a)(2), a responsible person is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." I have already noted that TCE is classified as a hazardous substance. NAC offers the affidavits of three former Regal employees to demonstrate that there was a disposal of TCE at the time Regal owned the Rogers Street plant.

Charles Stadtler, a Regal employee from 1980 through 1981, avers that, during his employment, he "personally observed spills and releases of chemicals from the degreasing machine...." (Stadtler Aff. at ¶ 3.) He further states that the chemicals from the baskets used by the degreasing machine to contain the parts to be cleaned often dripped over and onto the floor around the machine when the baskets were lifted out of the degreaser. (Stadtler Aff. at ¶ 3.) Such dripping allegedly caused the floor to become covered with the degreasing fluid and very slippery. (Stadtler Aff. at ¶ 4.)

The affidavit of John Newhauser asserts that the degreasing fluid used by the parts degreasing machine contained TCE. (Newhauser Aff. at ¶ 3.) Neal Zobel, another former Regal employee, confirms that the degreasing chemical used by Regal's parts degreasing machine was TCE. (Zobel Aff. at ¶ 3.) Further, Mr. Zobel avers that during his employment with Regal (from 1976 to 1980 and mid–1981 to 1983) he witnessed "several instances in which TCE was accidentally spilled on the floor around the parts degreasing machine." (Zobel Aff. at ¶ 4.) He states that the spills would occur when dirty TCE had to be replaced with clean TCE and when baskets used to degrease parts dripped the chemical onto the floor around the machine. (Zobel Aff. at ¶ 4.)

In an effort to establish that there is a genuine issue as to whether there was a spill of TCE when Regal owned the Rogers Street plant, Regal provides the affidavits of two former employees. In a supplemental affidavit offered by Regal, Mr. Newhauser states that during his employment with Regal (from 1976 to 1981) "there were no spills or releases into the environment of any [TCE], either in the operation of the parts cleaner or anywhere else at the facility. (Supplemental Affidavit of Newhauser at ¶ 3.) He further testifies that "no such spills were ever reported to [him] or anyone else at [Regal]." (Supplemental Aff. of Newhauser at ¶ 3.)

Another former Regal employee, William Savin, asserts that there were no spills of TCE or reports of such spills during his employment from 1976 to 1986. (Savin Aff. at ¶ 3.) In addition, in contrast to the claims of Mr. Stadtler, he states that "parts which came up in the baskets [of the degreasing machine] ... would not pass over the floor before they were dry." (Savin Aff. at ¶ 5.)

Under CERCLA, the term "disposal" is to have the meaning provided in § 1004 of the Solid Waste Disposal Act, 42 U.S.C. § 9601(29). The Solid Waste Disposal Act defines disposal to mean (emphasis added):

the discharge, deposit, injection, dumping, ***spilling,*** leaking, or placing of any solid

waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

NAC argues that the spilling of TCE by Regal in the operation of the parts degreasing machine constitutes a disposal under CERCLA such that Regal is a responsible person. Thus, whether TCE was spilled during Regal's ownership would appear to be a material fact in this case.

In my opinion, Regal has demonstrated the existence of a factual issue as to whether there was a spilling of TCE during Regal's ownership. Regal's version of the facts, as identified in the affidavits of Mr. Savin and Mr. Newhauser, support the premise that no spill of TCE occurred during Regal's ownership via dripping from the baskets containing the parts, the replacement of dirty TCE with clean TCE or in any other manner. Regal's affidavits provide adequate proof upon which a reasonable jury could return a verdict for Regal.

To grant NAC's motion for summary judgment when there is meaningful evidence in favor of two different versions of the facts would require that I weigh the evidence and assess credibility. However, "[c]redibility determination, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ... he is ruling on a motion for summary judgment...." *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir.1993) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14).

Accordingly, I find that Regal has successfully demonstrated that there is a genuine issue as to whether a disposal occurred when it owned the Rogers Street plant.

**2. Party that Arranged for Disposal Under § 9607(a)(3)**

■ According to § 9607(a)(3), a responsible person is:

any person who by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned and possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

NAC maintains that in addition to its liability as a former owner, Regal is a responsible person under 42 U.S.C. § 9607(a)(3). I have already determined that there is a genuine issue as to whether a disposal took place during Regal's ownership. Proof that Regal disposed of a hazardous substance—TCE—is a necessary element to confirm liability under § 9607(a)(3). Thus, Regal has established the existence of a genuine issue of material fact in connection with NAC's claim that Regal is liable as a party that arranged for disposal.

### IV. Conclusion

Having concluded that there are significant factual issues as to whether Regal is responsible for the contamination in question, I will deny NAC's motion for partial summary judgment.

Therefore, IT IS ORDERED that NAC's motion for partial summary judgment be and hereby is denied.