**PREMIUM PLASTICS, Plaintiff,**

v.

**LaSALLE NATIONAL BANK, et al., Defendants.**

No. 92 C 0413.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 1, 1995.

Karen Kay Litscher, William Augustus Speary, Jr., Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Premium Plastics Inc., Lake Shore National Bank, Raymond J. Spinner, Gerald R. Spinner, Neil E. Spinner.

Richard Reese Elledge, Karin Therese O'Connell, Gould & Ratner, Chicago, IL, for LaSalle National Bank, Henry Crown and Co., Lester Crown.

Steven B. Varick, Marc L. Fogelberg, Jacqueline Raznik, Clifton A. Lake, McBride, Baker & Coles, Chicago, IL, William D. Serritella, Ross & Hardies, P.C., Chicago, IL, for Sherwin Williams Company.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Defendants Sherwin Williams Company, Henry Crown & Co., and Lester Crown (collectively "defendants") move the court to enter summary judgment on their behalf under Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth below, the court denies their motions.

### Background

This case involves contaminated property at 2601 South Archer Avenue, Chicago, Illinois ("the property"). Prior to 1966, a trucking company called Latham Cartage owned the property. (Def.'s 12(M) Statement ¶ 2; Pl.'s 12(N) Statement ¶ 2.) Latham Cartage installed, removed, or replaced underground gasoline storage tanks on several occasions. (Pl.'s Resp., Ex. 7 at 7.) From 1966 to 1988, Henry Crown & Co. owned the property. During at least some of this period Lester Crown was a general partner of Henry Crown & Co.[1] In 1988 Henry Crown & Co. sold the property to Plaintiff Premium Plastics ("Premium Plastics"), and Premium Plastics has owned the property ever since. (Def.'s 12(M) Statement ¶ 1; Pl.'s 12(N) Statement ¶ 1.) At all relevant times a large building ("the building") sat on the property.

During most or all of the years it owned the property, Henry Crown & Co. rented it to the Sherwin–Williams Company ("Sherwin–Williams"). (Def.'s 12(M) Statement ¶ 3; Pl.'s 12(N) Statement ¶ 3.) Sherwin–Williams used the building on the property as a paint warehouse and distribution facility. (Def.'s 12(M) Statement ¶ 4; Pl.'s 12(N) Statement ¶ 4.) In January 1986 Sherwin–Williams filed a form with the Environmental Protection Agency entitled "Notice of Hazardous Waste Activity." On a section of the form requesting a list of "each chemical sub-

---

**1.** *See* footnote 2 below (discussing ownership in this case).

stance your installation handles which may be a hazardous waste," Sherwin–Williams listed twelve substances commonly found in paint and varnish, including the chemical toluene. (Pl.'s Resp., Ex. 3, Ex. 4 ¶¶ 21–26.)

According to Wayne R. Ewing, a Sherwin–Williams employee, Sherwin–Williams' principal activities in the building and on the property involved receiving, storing, moving, and distributing containers of paint. (Pl.'s Resp., Ex. 2 at 16–17, 43–44.) In this process, potentially hazardous substances came in contact with the floor of the building in at least three ways. First, in order to control dust, employees of Sherwin–Williams varnished the main floor of the building roughly three times a year, using a mixture of half varnish and half benzene. (*Id.* at 119–23, 130.) Second, while moving containers of paint, employees of Sherwin–Williams sometimes spilled paint on the floor of the building. When they spilled oil-based paint, they cleaned up the spill with rags soaked in toluene or some other paint thinner. (*Id.* at 32–33, 90–93.) Third, Sherwin–Williams conducted maintenance on seven forklifts and twelve motorized carts used in the building, periodically changing the oil and transmission fluid in each vehicle and periodically repainting each vehicle. During the course of such maintenance, grease and paint would get on the floor of one or more side rooms in the building. (*Id.* at 44–46, 59–63.)

The building had a concrete floor. Ewing stated that the floor was old and thick, with several cracks, some of them as wide as one-quarter inch and as long as six feet. (Pl.'s Resp., Ex. 2 at 36–37, 141.) Stuart Neiman, an environmental consultant who inspected the building after Sherwin–Williams left, found many cracks in the floor, some of them approximately one-quarter inch wide and over six feet long. Neiman also observed construction joints between sections of the concrete floor. (Pl.'s Resp., Ex. 4 ¶¶ 10–17.) Based on his experience, Neiman stated that such cracks and joints "provide a preferential pathway for chemicals and metals, especially in dissolved or liquid form, to reach the subsurface material (including soil and water) below the concrete floor." *Id.*

After Premium Plastics purchased the property in 1988, it discovered contamination there. Subsequent sampling indicated that subsoil and groundwater on the property contained eleven of the twelve hazardous substances listed by Sherwin–Williams in 1986, including toluene. The sampling also indicated the presence of seven other hazardous substances, including benzene. (*Id.* ¶¶ 21–31.)

### Analysis

A court renders summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Conversely, the court does not render summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, a court ruling on a motion for summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

On a motion for summary judgment, the movant "bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts demonstrating that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). In determining whether a genuine issue of material fact precludes summary judgment, the court reviews the evidence and draws all inferences "in the light most favorable to the nonmovant." *Id.; Federal Deposit Ins. Corp. v. Knostman,* 966 F.2d 1133, 1140 (7th Cir.1992).

Whether a disputed fact is material depends on the relevant substantive law.

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In this case plaintiff seeks contribution from defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*

> CERCLA is a broad, remedial statute enacted by Congress in order to enable the Environmental Protection Agency (the "EPA") to respond quickly and effectively to hazardous waste spills that threaten the environment, and to ensure "that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."

*General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 285 (2d Cir.1992) (quoting legislative history). Under CERCLA, "any person may seek contribution from any other person who is liable or potentially liable." 42 U.S.C. § 9613(f)(1); *Environmental Transp. Sys., Inc. v. ENSCO, Inc.,* 969 F.2d 503, 506 (7th Cir.1992). A person seeking to establish the liability of another must demonstrate that:

> (1) the site in question is a "facility" as defined by CERCLA;

**2.** Under this provision of CERCLA plaintiffs seek contribution from defendants Henry Crown & Co. and Lester Crown as "owners" and from defendant Sherwin–Williams as "operator" of a facility at which hazardous substances were disposed of. The court has already ruled that Henry Crown & Co. and its partners "owned" the property for the purposes of this CERCLA action. (*See* Mem.Op. and Order dated Oct 21, 1992 at 3, 9.) Technically the property was held in trust, with La Salle National Bank serving as trustee and Henry Crown & Co. and its partners as beneficiaries. (*Id.*)

**3.** This definition of "disposal" resolves as neatly as possible an ambiguity in this provision of CERCLA, which could apply to persons who dispose of a hazardous *substance* or to persons who dispose of a *waste.* On the one hand, CERCLA defines "responsible person" as "any person who at the time of disposal of any hazardous *substance* owned or operated any facility at which such hazardous *substances* were disposed of." 42 U.S.C. § 9607(a)(2) (emphasis added). On the other hand, the provision of CERCLA listing general definitions gives the term "disposal" the meaning provided in the Solid Waste Disposal Act ("SWDA"):

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or

> (2) the Defendant is a "responsible person" for the spill as defined by CERCLA;

> (3) there was a release of hazardous substances; and

> (4) such a release caused the Plaintiff to incur response costs.

*Id.* (citations omitted); 42 U.S.C. §§ 9613(f)(1), 9607(a). Defendants argue that they are entitled to summary judgment because they are not "responsible persons" as defined by CERCLA and because they did not cause plaintiff to incur response costs. The court rejects both arguments.

## I. RESPONSIBLE PERSONS

Under CERCLA, a "responsible person" includes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).[2] The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any [hazardous substance] into or on any land or water so that such [hazardous substance] or any constituent thereof may enter the environment or be … discharged into any waters, including ground waters." 42 U.S.C. §§ 9601(29), 6903(3).[3] The term "environ-

> placing of any solid *waste* or hazardous *waste* into or on any land or water so that such solid *waste* or hazardous *waste* or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 9601(29) (CERCLA reference to SWDA definition); 42 U.S.C. § 6903(3) (SWDA definition) (emphasis added). The question naturally arises: Did the drafters of CERCLA intend to define a "responsible person" as the owner or operator of a facility where hazardous *substances* were disposed of, or—alternatively—where hazardous *wastes* were disposed of?

The parties in this case adopt the first alternative: A "responsible person" is the owner or operator of a facility where hazardous *substances* were disposed of. (*See* Pl.'s Resp. at 4 (employing first definition); Def.'s Reply at 4 (same)). The court also adopts the first alternative because it makes more sense of the statute. *See California v. Summer Del Caribe, Inc.,* 821 F.Supp. 574, 579 (N.D.Cal.1993) (first alternative more consistent with language, purposes, and legislative history of CERCLA); *CP Holdings, Inc. v. Goldberg–Zoino & Assocs., Inc.,* 769 F.Supp. 432, 437 (D.N.H.1991) (same).

ment" encompasses any "land surface or sub-surface strata." 42 U.S.C. § 9601(8).

Defendants argue that they are entitled judgment as a matter of law because plaintiff fails to set forth facts demonstrating that defendants are "responsible persons" under CERCLA. Defendants concede that evidence in the record, if true, indicates that Sherwin–Williams deposited, spilled, leaked, or placed certain hazardous substances *onto* the concrete floor of the building. (Pl.'s Reply at 2–3, 5, 7–8.) However, defendants argue that plaintiff's have no evidence that such hazardous substances could enter the environment, *i.e.,* the subsoil and groundwater. (Pl.'s Reply at 4–12.)

Responding to defendants' argument, plaintiff sets forth the following facts. Sherwin–Williams varnished the concrete floor of the building with a mixture of half varnish and half benzene—a hazardous substance later discovered in the subsoil and groundwater on the property. Sherwin–Williams cleaned up paint spills with rags soaked in toluene—a hazardous substance later discovered in the subsoil and groundwater on the property. Sherwin–Williams serviced and painted its vehicles in side-rooms of the building, causing grease and paint to drip or spill on the floor; grease and paint typically contain certain hazardous substances later discovered in the subsoil and groundwater on the property. Neiman indicated that cracks and joints in the concrete would provide a preferential pathway for chemicals to reach the soil and water below the floor.

These facts demonstrate that the question whether defendants were "responsible persons" can only be resolved at trial. As noted above, "responsible persons" under CERCLA include former owners and operators if, during the time of ownership and operation, hazardous substances were deposited, spilled, leaked or placed on any land so that they could enter the environment. 42 U.S.C. §§ 9601(29), 6903(3). Based on the facts set forth above, a reasonable jury could conclude that defendants were "responsible persons" in that Sherwin–Williams deposited, spilled, leaked or placed hazardous substances on land so that they could enter the environment. The court agrees with defendants that plaintiff's evidence is circumstantial and less than overwhelming. On a motion for summary judgment, however, the nonmovant need not "persuade the court that her case is convincing[;] she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921 (7th Cir. 1994) (citations omitted). Plaintiff clearly satisfies this burden.

There is ample authority for denying defendants' motion for summary judgment. In *Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. 784, 791–92 (D.N.J. 1989), plaintiff showed that defendant spilled fluids containing polychlorinated biphenyls ("PCBs") onto the floor of an industrial plant, and that PCBs contaminated the land on which the plant sat. Although plaintiff did not specify a means by which the PCBs could have traveled from the plant floor to the land, the judge denied defendant's motion for summary judgment, stating that "disposal within the plant is disposal 'into or on any land or water' within the meaning of CERCLA." *Id.* at 791. In *National Acceptance Co. v. Regal Products,* 838 F.Supp. 1315 (E.D.Wis.1993), plaintiffs showed that defendants spilled a degreasing fluid (trichloroethylene or "TCE") on the concrete floor of a degreasing pit in an industrial plant, and that TCE contaminated the land surrounding the plant. Although the degreasing pit had a thick concrete base with no breaches or cracks through which liquids could pass, the judge denied defendant's motion for summary judgment. *Id.* at 1320. *See also United States v. Fleet Factors Corp.,* 821 F.Supp. 707, 721–22 (S.D.Ga.1993) (spilling and scattering hazardous substances on floor of industrial plant constitutes disposal under CERCLA); *BCW Assocs., Ltd. v. Occidental Chem. Corp.,* Civ.A. No. 86–5947, 1988 WL 102641 at *13 (E.D.Pa., September 29, 1988) (spreading lead dust onto floor of warehouse constituted disposal under CERCLA); *Emhart Indus., Inc. v. Duracell Int'l, Inc.,* 665 F.Supp. 549, 574 (M.D.Tenn.1987) (spilling PCBs on floor of manufacturing plant constitutes disposal under CERCLA); *cf. Reichhold Chems., Inc. v. Textron, Inc.,* 888

F.Supp. 1116, 1127 (N.D.Fla.1995) ("[L]eakage or spillage of hazardous substances inside a plant constitutes 'disposal' under CERCLA as a matter of law.").

The three cases cited by defendants in no way alter the result in this case. In fact, *Covalt v. Carey Canada, Inc.*, 860 F.2d 1434 (7th Cir.1988) supports plaintiff's argument against summary judgment. In *Covalt* the Seventh Circuit Court of Appeals held that a worker suffering adverse health consequences as a result of working with asbestos inside a factory had no remedy against his former employer under CERCLA. The court found that asbestos inside a factory was not "released into the environment." By contrast, the court suggested that CERCLA would apply to cases of "asbestos wafting out of [the] plant and contaminating a nearby meadow, or . . . fluids leaching into the water supply from a plant." *Id.* at 1436–37. Since this case involves hazardous substances escaping into subsoil and groundwater, the *Covalt* language actually supports the denial of summary judgment.

In *3550 Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355 (9th Cir.1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991), a divided panel of the Ninth Circuit Court of Appeals held that installing asbestos inside a commercial building does not constitute "disposal" under CERCLA. The court observed that "disposal" involved the discharge or deposit of a hazardous waste into or on land or water so that it "may enter the environment or be emitted into the air or discharged into any waters, including ground waters." *Id.* at 1361. The court found no evidence that asbestos built into the structure of a building could enter the environment or be emitted into the air. Even if the asbestos became brittle, the court noted, any resulting hazard would remain inside the building and not travel into the environment outside the building. *Id.* Unlike the plaintiffs in *3550 Stevens Creek*, the plaintiff in this case has set forth specific facts suggesting that hazardous substances could enter the environment *outside* the building, namely, the subsoil and groundwater on the property. Therefore, the Ninth's Circuit's reasoning in *3550 Ste-*

*vens Creek* does not mandate a different result in this case.

Like *3550 Stevens Creek*, the case *Cyker v. Four Seasons Hotels Ltd.*, Civ.A. No. 90–11929–Z, 1991 WL 1401 (D.Mass., Jan. 3, 1991), involved allegedly polluted air *inside* a building. Because the case at bar involves contaminated subsoil and groundwater *under* a building, the reasoning in *Cyker* does not apply to this case.

## II. CAUSATION

■ Defendants contend that plaintiff must demonstrate a causal connection between Sherwin–Williams' waste and plaintiff's response costs. In support of this contention defendants cite two Eighth Circuit cases holding that although the government need not make "any showing of causation or fault" under CERCLA, private plaintiffs "must prove that the release of hazardous substances caused the response costs at issue." *Farmland Indus. v. Morrison–Quirk Grain Corp.*, 987 F.2d 1335, 1339 (8th Cir. 1993); *accord General Elec. Co. v. Litton Indus. Automation Sys.*, 920 F.2d 1415, 1417 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991).

Notwithstanding these Eighth Circuit cases, this court declines to impose such a requirement on private plaintiffs in CERCLA actions. The First, Second, Third, and Fourth Circuits have rejected the argument that CERCLA plaintiffs must show a causal connection between defendant's waste and plaintiffs' response costs. *See United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 264–66 (3d Cir.1992); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1152–54 (1st Cir.1989); *United States v. Monsanto*, 858 F.2d 160, 168–71 (4th Cir. 1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042–47 (2d Cir.1985). In rejecting this argument, all four circuits employed broad language that clearly applied to all plaintiffs—government and private alike. *See Alcan Aluminum Corp.*, 964 F.2d at 265 ("[A] CERCLA plaintiff need not establish a direct causal connection between the defendant's hazardous substances and the release or the

plaintiff's incurrence of response costs."); *Dedham Water*, 889 F.2d at 1153 (CERCLA "impose[s] liability on classes of persons ... without reference to whether they caused or contributed to the release or threat of release."); *Monsanto*, 858 F.2d at 168 (CERCLA "extends liability to owners of waste facilities regardless of their degree of participation in the subsequent disposal of hazardous waste."); *id.* at 170 (CERCLA "allocate[s] the burden of disproving causation to the defendant."); *Shore Realty*, 759 F.2d at 1044 (CERCLA imposes strict liability "without regard to causation.").

The plain language of CERCLA supports the conclusion that a CERCLA plaintiff—government or private—need not prove a connection between the defendant's waste and the plaintiff's response costs. Under CERCLA a plaintiff seeking to hold a defendant liable must demonstrate that (1) the site in question is a "facility," (2) defendant is a "responsible person," (3) a hazardous substance was released, and (4) the release caused plaintiff to incur response costs. *Environmental Trans. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir.1992); 42 U.S.C. § 9607(a). Once plaintiff establishes these elements, nothing in the language of CERCLA requires plaintiff to prove that defendant caused the particular release that caused plaintiff to incur response costs. *See* 42 U.S.C. § 9607(a) (stating no such requirement); *Alcan Aluminum*, 964 F.2d at 264 (finding no such requirement in plain language of statute). Moreover, CERCLA in no way states or implies that private plaintiffs bear a heavier burden of proof than government plaintiffs. On the contrary, the subsection providing for liability to the government and the subsection providing for liability to private plaintiffs incorporate *exactly* the same statutory language. *See* 42 U.S.C. § 9607(a).

Moreover, the legislative history of CERCLA supports the conclusion that a CERCLA plaintiff—government or private—need not prove a connection between the defendant's waste and the plaintiff's response costs. The final version of the law passed by Congress failed to include a strict causation requirement present in an early House version of the law. *See Alcan Aluminum*, 964 F.2d at 264–65 (discussing legislative history); *Shore Realty*, 759 F.2d at 1044–45 (same). Given the broad remedial purposes of CERCLA, it seems that "[r]equiring a plaintiff to link a specific defendant with a specific release or response would prove too difficult for a plaintiff, especially in a multi-generator context." *Elf Atochem N. Am. v. United States*, 833 F.Supp. 488, 494 (E.D.Pa.1993). If Congress had wanted to retain a strict causation requirement for private plaintiffs, it certainly could have done so. Instead, Congress dropped the strict causation requirement altogether—suggesting that Congress did not wish to impose such a requirement on any plaintiffs, whether government or private.

■ In light of the plain meaning and legislative history of CERCLA, as well as persuasive analyses by four circuit courts, this court holds that to bring a successful CERCLA action a plaintiff—whether government or private—need not prove that the defendant caused the particular releases that caused the plaintiff to incur response costs. Even if CERCLA did require that plaintiff show such a causal connection, the court finds that plaintiff makes enough of a showing in this regard to escape summary judgment. Plaintiff has come forward with facts indicating that:

(1) Sherwin–Williams deposited, spilled, leaked or placed certain hazardous substances directly on the floor of the building;

(2) The same types of hazardous substances (*e.g.,* benzene, toluene) later appeared in the subsoil and groundwater on the property; and

(3) According to plaintiff's expert, Neiman, cracks and joints in the concrete floor provide a preferential pathway to the subsoil and groundwater.

From these facts a reasonable jury could conclude that Sherwin–Williams caused some or all of the actual releases that caused plaintiff to incur response costs.

### *Conclusion*

For the reasons set forth above, the court denies defendants' motions for summary

judgment. The date for filing related motions runs from the date this Memorandum Opinion and Order is entered. The court instructs the parties to discuss settlement before the next court date.